# Richmond

## AMERICAN-LAFRANCE AND FOAMITE INDUSTRIES, INC. v. ARLINGTON COUNTY.

March 14, 1935.

Present, All the Justices.

The opinion states the case.

*C. C. Carlin* and *Leslie C. Garnett,* for the plaintiff in error.

*James H. Simmonds* and *Lawrence W. Douglas,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This action originated in a demand presented to the board of supervisors of Arlington county for payment of a debt alleged to be due by the county. The claim was stated thus:

"Arlington county, Virginia, is justly indebted to American-LaFrance and Foamite Industries, Incorporated, in the sum of thirty-four thousand seven hundred forty-two dollars ($34,742) principal and four thousand eight hundred forty-seven dollars and forty-nine cents ($4,847.49) interest, being the balance due on the purchase price of fire fighting apparatus and equipment sold and delivered to the said county by the said claimant." Then follows a description of the property.

"An itemized sworn account of this claim is hereto attached, supported by attached copies of six contracts and thirteen notes.

"Claimant therefore demands payment in the said sums of $34,742 principal and $4,847.49 interest."

Payment of the demand was refused, on the ground that the contracts and notes were invalid under the provisions of section 115-a of the Constitution of Virginia. Plaintiff appealed to the circuit court of the county, where a demurrer was sustained and the case dismissed. From that judgment this writ of error was awarded.

The pertinent provisions of section 115-a read:

"No debt shall be contracted by any county * * * except in pursuance of authority conferred by the General Assembly by general law; and the General Assembly shall not authorize any county * * * to contract any debt except to meet (1) casual deficits in the revenue, (2) a debt created in anticipation of the collection of the revenue of the said county * * * for the then current year, (3) or to redeem a previous liability, unless in the general law authorizing the same, provision be made for the submission to the

qualified voters of the proper county * * * for approval or rejection, by a majority vote of the qualified voters voting in an election, of the question of contracting such debt; and such approval shall be a prerequisite to contracting such debt. No script, certificate or other evidence of county or district indebtedness shall be issued except for such debts as are expressly authorized in this Constitution or by the laws made in pursuance thereof."

Section 2727 of the Code, as amended by Acts 1930, chapter 462,* is the general law passed pursuant to the foregoing constitutional mandate, authorizing the boards of supervisors to incur certain indebtedness, prescribing the maximum amount of that indebtedness, the purpose for which it shall be made, and the time of payment.

It is conceded that the obligation here in question is not within the exception noted in the Constitution or authorized by the above-mentioned statute. It is also conceded that the question of whether the county should incur this indebtedness was not submitted to the qualified voters.

■ Plaintiff's brief states its contention thus:

"Under these circumstances the provisions of the contract and the notes providing for payments, other than those out of the collection of the revenue for the current year, are void. However, the object of the contract, that is, the purchase of fire equipment for the use of the county, is perfectly lawful and the contract is not void as offensive to public

---

*Code, section 2727, as amended by Acts 1930, chapter 462: "The board of supervisors shall have power to direct the raising, by levy, of such sums as may be necessary to defray the county charges and expenses and all necessary charges incident to or arising from the execution of their lawful authority. For the purpose of meeting casual deficits in the revenue, or creating a debt in anticipation of collection of the revenue of said county, the board is hereby authorized to borrow not earlier than June first of any year a sum of money not to exceed one-fourth of the amount produced by the county levy laid in such county for the year in which the loan is negotiated. Such temporary loans shall be evidenced by notes or bonds negotiable, or non-negotiable, as the board may determine; shall bear interest at a rate not exceeding six per centum per annum, and shall be repaid not later than December fifteenth of the year in which it is borrowed. No extension of said loan shall be valid. No additional loan under this section shall be made until all prior temporary loans shall have been paid."

policy, but only because the method of payment is in excess of the corporate power.

"Although there may be no recovery under the contract or upon the notes, there may be a recovery for the value of the goods sold and delivered which the county has received and used."

The principle plaintiff states is sound when applied to a contract invalid simply because it was defectively executed, or was not expressly prohibited, or was not in violation of a rule of public policy established for the benefit of local tax payers. This principle was applied by this court in *Mount Jackson* v. *Nelson*, 151 Va. 396, 145 S. E. 355. In that case the town had contracted with one Nelson, who owned a filling station outside the corporate limits, for the erection of a water main extending 1,081 feet from the corporate limits to his property. In the contract, the town agreed to supply Nelson with water "whenever persons of the town of Mount Jackson are allowed to use the water for other than household purposes." After the work was done, the town refused to complete payment for construction of the pipe line and to furnish water to plaintiff. An action was instituted against the town for the balance due. It was held that so much of the contract as bound the town to furnish water to plaintiff on the same basis as domestic users was *ultra vires*, but that the town had a right to sell its surplus water, "and as ancillary thereto had the right to lay pipes * * *. It also follows that it is liable for necessary expenses incurred in so doing." Other cases cited by plaintiff apply the same principle.

This action seeks recovery against the county for an obligation which, by the fundamental law of the land, it is expressly prohibited from incurring.

■■ Counties and "municipal corporations are the creatures of the legislature. They have such powers to contract, and only such powers, as the legislature grants to them. When the legislature withholds power to contract, or permits the exercise of the power in a given case only in accordance with imposed restrictions, the corporation may

no more bind itself by implied contract than by the forbidden express contract. All persons dealing with a municipal corporation are charged with notice of the limitations upon its power. Those limitations may not be exceeded, defeated, evaded, or nullified under guise of implying a contract. A municipal contract let without competitive bidding, when the statute requires competitive bidding, is void, and no recovery may be had either upon the purported express contract or upon an implied contract to pay the reasonable value of the services or material furnished thereunder." *Johnson County Savings Bank* v. *Creston*, 212 Iowa 929, 231 N. W. 705, 707, 237 N. W. 507, 84 A. L. R. 926, 930.

This principle was applied by this court in *City of Bristol* v. *Dominion Nat. Bank*, 153 Va. 71, 149 S. E. 632. In the opinion written by Mr. Justice Holt (who also wrote the opinion in *Mount Jackson* v. *Nelson, supra*) at page 82 of 153 Va., 149 S. E. 632, 635, this is said:

"In that case [*City of Ensley* v. *J. E. Hollingsworth & Co.*, 170 Ala. 396, 54 So. 95, 97, Ann. Cas. 1912D, 652] it was said that the plaintiff could not 'maintain an action upon the *quantum meruit* for work done, or upon the *quantum valebat* for materials furnished. The transaction itself out of which the contract springs falls under the ban of the law. It comes within the class, and upon like principles, of contracts that are expressly prohibited by statute. The illegality affects the entire transaction, and out of it no cause of action can arise.'

"Judge Taft has thus adequately defined the right and its limitation: 'Where the conferring of benefits was induced by an express agreement which is void the law will not supply an obligation to pay on the ground of unjust enrichment as a *quasi* contract, unless, in the absence of the express agreement, a real but tacit contract could have been inferred from the circumstances.' *Travelers' Ins. Co.* v. *Johnson City* (C. C. A.) 99 Fed. [663], 667 [49 L. R. A. 123]; *Mount Jackson* v. *Nelson*, 151 Va. 396, 145 S. E. 355; *Hitchcock* v. *Galveston*, 96 U. S. 341, 24 L. Ed. 659; *Chap-*

*man* v. *County of Douglas,* 107 U. S. 348, 2 S. Ct. 62, 27 L. Ed. 378.

"But it is necessary that a tacit promise to pay may fairly be inferred from the circumstances and the express contract set aside must have not been against public policy and not expressly prohibited by the charter or by statute.

" 'On the other hand it is doubtful if there are any cases which hold that when a contract is in a class expressly prohibited by charter or statute the acceptance of benefits raises an implied obligation.' McQuillen on Municipal Corporations (2d Ed.) Vol. 3, page 820."

Prior to 1928, there was no limitation upon the General Assembly as to the amount of indebtedness that it, by local bills, or otherwise, might authorize the different counties to incur. The local governing bodies of these political subdivisions of the State would frequently contract debts which could not be paid out of the revenue for the current year, and then, without submitting the question to the qualified voters, would ask the General Assembly to authorize bond issues to pay debts already contracted, or for other expenditures desired to be made. For instance, at the 1922 session of the General Assembly, twenty-five counties were authorized to incur indebtedness of $3,194,000; at the 1924 session, twenty-seven counties were authorized to borrow $3,494,-000; at the 1926 session twenty counties were authorized to borrow $2,300,000. Of the twenty-seven counties referred to, three were authorized to issue bonds and borrow money at each of the three sessions and fifteen counties were given like authority at two of the sessions mentioned.

Thoughtful citizens of the State realized that if some check were not placed upon this growing tendency, the credit of the counties would be seriously impaired, if not destroyed. Hence section 115-a was conceived, introduced in the General Assembly in 1926, and adopted by the people in 1928 as an amendment to the Constitution. Its object and purpose is expressed in clear and unambiguous language. The General Assembly in the same year, 1926, adopted chapter 545, requiring the governing body of each

political subdivision of the State to prepare an annual budget containing a complete and itemized plan of all proposed expenditures, the estimated amount of revenue, the amount of revenue received for the preceding year and how expended, an itemized and complete financial sheet for the preceding fiscal and appropriation year, and requiring a synopsis of this budget to be published and notice of one or more hearings, before any increase in local taxes could be made. See *Smith* v. *Board of Sup'rs of Washington County,* 155 Va. 343, 154 S. E. 479.

While this act may have no direct bearing upon the question to be decided, it is another expression by the legislature evincing a determined policy to limit and restrict the power of the boards of supervisors in the assessment of taxes and the expenditure of public funds, and to compel them to adopt the "Pay as you go" plan. Both the Constitution and the statutory law of this Commonwealth prohibit any and all boards of supervisors from incurring any debt for any purpose which is not payable out of current revenue, unless the question of the proposed expenditure is submitted to the qualified voters for their approval. The intent of the Constitution is unmistakable. It states:

" * * * such approval shall be a prerequisite to contracting such debt. No script, certificate or other evidence of county or district indebtedness shall be issued except for such debts as are expressly authorized in this Constitution or by the laws made in pursuance thereof." Section 115-a.

Code, section 2727, as amended by Acts 1930, chapter 462, heretofore quoted, states for what purposes the boards of supervisors, without approval of voters, may execute notes of the counties, and requires that they shall be payable not later than December fifteenth of the year in which the money is borrowed, and adds, "no extension of said loan shall be valid."

By the six contracts and notes in question, the board of supervisors of Arlington county incurred an indebtedness of $63,450; $20,750 was paid in cash, and the residue of $42,-700 evidenced by notes signed by the board of supervisors,

payable one, two and three years from date. Of this latter sum, $7,948 was paid. The contract further provided that title to the fire fighting equipment should be retained by the vendor until the total sums named therein had been paid.

Plaintiff concedes that the contracts and notes evidencing this indebtedness are void, but contends that because the board of supervisors had authority, under a general statue, to furnish fire protection for the locality, the purchase of the equipment was lawful, and that the county having received the benefit of the contract was liable to it on an implied contract for the balance of the purchase price.

An approval by a majority of the citizens voting on the question properly submitted to them, is a prerequisite to the power of the board of supervisors to create an obligation for any purpose, payable at some future time beyond the termination of the current fiscal year. In no other way, directly or indirectly, can the board bind the county on any such obligation. If the constitutional mandate may be evaded by allowing recovery on an implied contract for $40,000, the balance claimed on the purchase price of the fire fighting equipment, it may be evaded in the same way for the erection of an almshouse at the cost of $100,000, or the erection of a school building at the cost of $500,000 or $1,000,000. The officers of the county, without the approval of the voters, have no more authority to make provision for the one than for the other. By so holding, the provisions of the Constitution and the statute approved and enacted by the sovereign power of the Commonwealth for the benefit and protection of the taxpayers would be rendered nugatory, and a complete cover and shield would be provided for acts which are prohibited.

In *Winchester* v. *Redmond,* 93 Va. 711, 718, 25 S. E. 1001, 1003, 57 Am. St. Rep. 822, this court quoted with approval from Dillon on Municipal Corporations, thus:

"It is a general and fundamental principle of law that all persons contracting with a municipal corporation must *at their peril inquire into the power* of the corporation or of its officers to make the contract; and a contract beyond

the scope of the corporate power is void, although it be under the seal of the corporation."

As stated in *Thomas* v. *Richmond*, 12 Wall. 349, 356, 20 L. Ed. 453:

Plaintiff "being chargeable with notice of the wrong, is *in pari delicto* with the officers, and should have no remedy, even for money had and received, against the corporation upon which he has aided in inflicting the wrong. The protection of public corporations from such unauthorized acts of their officers and agents is a matter of public policy in which the whole community is concerned. And those who aid in such transactions must do so at their peril."

As said by Judge Woods in *Luther* v. *Wheeler*, 73 S. C. 83, 52 S. E. 874, 878, 4 L. R. A. (N. S.) 746, 752, 6 Ann. Cas. 754:

"For it is to be observed that, while a recovery for money had and received does not require either an express contract or a contract implied in fact to support it, yet it does require for its support a debt imposed by law; and, where the Constitution or statute law of the State forbids, not only the borrowing of money, but the incurring of any debt, or that a debt, to be valid, must be created under certain restrictions, as, for instance, that it must have the sanction of taxpayers or voters expressed at an election, then there can be no recovery for money had and received. In its last analysis, the action for money had and received stands on the judicial conception that the use by one person of the money of another creates a debt; but this judicial conception manifestly could have no application to municipal corporations in the face of positive constitutional or statute law that no debt shall be contracted by a municipality, or that a debt shall be contracted only in a certain manner." To the same effect, see, also, *Litchfield* v. *Ballou*, 114 U. S. 190, 5 S. Ct. 820, 29 L. Ed. 132; *Buchanan* v. *Litchfield*, 102 U. S. 278, 26 L. Ed. 138; *Lake County* v. *Rollins*, 130 U. S. 662, 9 S. Ct. 651, 32 L. Ed. 1060; *Hedges* v. *Dixon County*, 150 U. S. 182, 14 S. Ct. 71, 37 L. Ed. 1044.

Plaintiff in this action is not seeking restoration of the

property which, we infer, is still in existence, but is demanding, on an implied contract, a definite sum, with interest, the sum demanded being the same amount which remains unpaid on the void contracts of sale. This, as heretofore stated, he cannot recover, either on an express contract or one implied by law. As neither the question of restoration nor compensation for use of the property from year to year is raised, either in the pleadings or in the briefs, we express no opinion thereon.

For the reasons stated, the judgment of the trial court is affirmed.

*Affirmed.*

BROWNING, J., dissenting.