## Staunton

AMERICAN-LAFRANCE AND FOAMITE INDUSTRIES, INC. V.
ARLINGTON COUNTY, VIRGINIA.

September 23, 1937.

Present, All the Justices.

4

The opinion states the case.

*Frank L. Ball* and *W. C. Gloth,* for the plaintiff in error.

*Lawrence W. Douglas,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

The American-LaFrance and Foamite Industries, Inc., hereinafter referred to as the plaintiff, in agreement with

the board of supervisors of Arlington county, Virginia, hereinafter referred to as the defendant, prior to January 1, 1932, sold and delivered to the county of Arlington, seven pieces of fire apparatus or equipment, under contracts which the board of supervisors undertook and presumed to execute for and on behalf of the defendant. The sale price of the equipment amounted to $63,450. The contract provided for an initial cash payment on account of the purchase price for each of the said pieces of equipment as it was delivered, and for the payment of the balance in one, two and three years from date, evidenced by a series of promissory notes executed by the board of supervisors on behalf of the county. $20,750 was paid in cash on delivery, and of the residue evidenced by notes, the sum of $7,948 was paid. Under the contracts, title to the equipment was reserved in the vendor until full payment of the entire purchase price.

The county subsequently declined to pay the balance on the ground that the contracts and notes were executed in violation of the statutes and of the provisions of section 115a of the Constitution of Virginia, and are, therefore, void, since the contracts and notes attempted to create a debt on the county, not approved by vote of its qualified voters, payable in some year or years beyond that in which the debt was contracted, and were not in payment of any previous liability of the county.

The plaintiff here thereupon brought an action against this same defendant to recover the alleged balance due on the purchase price of the fire-fighting apparatus and equipment sold and delivered to the county. It was conceded that the obligation in question did not come within the exceptions noted in the statutes and in the Constitution, and that the creation of the debt had not been submitted to the qualified voters. It was contended, however, that although there could be no recovery under the contracts, or upon the notes, there could be a recovery for the value of the equipment sold and delivered. A judgment of the Circuit Court of Arlington county sustaining a demurrer to the action of the plaintiff was affirmed by this court on March 14, 1935,

in the case of *American-LaFrance & Foamite Industries, Inc.* v. *Arlington County*, 164 Va. 1, 178 S. E. 783. This court there held that the contracts and notes were void, and that the plaintiff could not recover either on the express contract or on one implied by law for the value of the goods. But since, as expressly stated in that opinion, the plaintiff did not seek restoration of the specific property, or compensation for the use thereof, neither of these questions was considered, and further opinion thereon was expressly reserved.

The decision in that case simply invalidated the agreement and contract made between the parties, and denied to the plaintiff the right to enforce its provisions, or to recover on a *quantum meruit* or *quantum valebat*. The contract for the payment of the money became utterly void and ·dead. It did not operate to create, or to pass title in the fire equipment to the county. It never had any life, nor did the action of the court breathe life into it for the purpose of changing the rights of the parties to the property. The title to the property remained as if the contract had never existed.

It now appears that since the decision in that case, the county of Arlington has retained in its possession and for its use the fire-fighting apparatus and equipment, and accepted the benefits thereof. No agreement having been made between the parties, either for its return, or for compensation for the use thereof, the plaintiff on September 28, 1935, filed with the board of supervisors of the county, seven separate claims for the rent thereof and also a written demand for the return of the property. The county having refused to make payment of the claims for rent, or to return the property, the plaintiff appealed to the Circuit Court of Arlington county, as provided by statute.

By agreement of counsel, the claims for rent and the demand for the return of the property were consolidated in one cause and heard together. The defendant filed its plea in bar, setting out the record in the former case, and contended as before, that the whole transaction was illegal,

contrary to public policy, and void; that it was without authority to rent the equipment, or to pay the balance due upon the contracts, either directly or indirectly; and that, if this action should be maintained, since no part of the payments made by the county on account of the purchase price had been repaid, or attempted to be repaid to it, it would lose the equipment and yet be required to pay for same.

The plaintiff demurred to the plea on the ground that it was not sufficient in law, and that the matters and things stated therein were immaterial and irrelevant, and did not constitute a defense to its claims. The trial court overruled the demurrer, and in its judgment recited that the plaintiff was not entitled to any rental or compensation for the use of the equipment, nor to the return thereof; but that it was entitled to have the said equipment sold and the proceeds of the sale applied to the balance of the purchase price thereof, with any surplus over the purchase price to be paid to the defendant, provided the plaintiff would amend its claim for return of the equipment, and pray for the relief indicated by the court's judgment. To this action of the court, both parties excepted, and the sole error here assigned by the plaintiff is to the action of the court in overruling the demurrer.

The issue now before us is, whether the plaintiff is entitled to the return of the fire-fighting equipment, and to reasonable compensation for its use.

The plaintiff contends that the contract is not *malum in se*, but merely invalid and void, since it violates a provision of law only in respect to the manner or mode of its performance on the part of the county; that the substance and object of the contract to secure the fire equipment and apparatus for the purpose of protecting the lives and property of the citizens of the county is a beneficent purpose, and is in no sense contrary to public policy, or forbidden by statute; that on the other hand, such object is one of the primary purposes and objects of a progressive government; that this object, in its substance, is not only not prohibited

by law, but is in accord with public policy; and that the invalidity of the contract does not apply to the object to be achieved, but solely to the manner and method by which it is sought to be achieved.

The defendant, on the other hand, contends that the contract is an illegal one, and relies especially upon the cases of *Levy* v. *Davis*, 115 Va. 814, 80 S. E. 791; *City of Bristol* v. *Dominion National Bank*, 153 Va. 71, 149 S. E. 632; *Thomas* v. *City of Richmond*, 12 Wall. (79 U. S.) 349, 20 L. Ed. 453, and *Roller* v. *Murray*, 112 Va. 780, 72 S. E. 665, 38 L. R. A. (N. S.) 1202, Ann. Cas. 1913B, 1088.

In these cases the court declined to enforce an agreement where the transactions upon which the contracts were based, were either *malum in se*, violative of public policy, forbidden by statute, or by common law, or involved moral turpitude. In each of these cases, the claimant either sought a recovery under the express terms of the contract, or upon an implied contract, to pay for goods sold or services rendered, and in order to enforce his claim, was required to trace his right through his own illegal acts and dealings.

In the *Levy Case*, the object of the contract was the furtherance of an illegal and immoral purpose known to both parties. In the *Bristol Case*, the agreement was in violation of common law, the city's charter, a State statute, a constitutional provision and public policy, and had but one object in view, to improve the property of an officer of the city at the expense of the city. The law provided not only that the contract should be void, but an additional penalty therefor. In the *Thomas Case*, one who was a violator of a penal statute, as a guilty holder of unauthorized currency, was denied the right to recover. In the *Roller Case*, a *quantum meruit* recovery sought upon a champertous contract, declared illegal in an action theretofore brought on the contract, was denied. The objects of the agreements above relied upon, were not only void, but illegal, and the parties were *in pari delicto* as to the objects sought to be achieved.

"An *illegal* contract has been defined as 'an agreement with an unlawful object. It is not merely lacking in valuable

subject matter, but its purpose is positively invalid.' *Billingsley* v. *Clelland,* 41 W. Va. 234, 244, 23 S. E. 812, 815. * * *

■■ " 'When no penalty is imposed, and the intention of the legislature appears to be simply that the agreement is not to be enforced, then neither the agreement itself nor the performance of it is to be treated as unlawful for any other purpose.' * * * Where an agreement violates a statute with respect *only* to the mere mode of its performance, the contract, its substance not being *prohibited* by law, is not unlawful—is not *illegal.* *Chapman* v. *County of Douglas, supra* (107 U. S. 348, 356, 2 S. Ct. 62, 69, 27 L. Ed. 378)." *General Electric Co.* v. *Town of Fort Deposit,* 174 Ala. 179, 56 So. 802, 805.

■■ Courts recognize a clear and marked distinction between contracts that are illegal and those merely invalid. If the contract is illegal, as involving an immoral purpose, or one for which a punishment is provided, and both parties have knowingly joined therein, they are held to be *in pari delicto,* and the court will not render aid to relieve either party of the consequences of their acts, but will leave them where it finds them. If the contract is, however, merely invalid, or is based upon a transaction involving no moral turpitude, and is simply contrary to some legal provision relating to the manner, method, or terms of its performance, with no penalty provided other than its invalidity, the court will not require performance of either the express contract or a contract by implication. In the latter class of cases, the courts have not declined to undertake to restore the *status quo* of the parties where in doing so no injustice is done to either party. The effort of the court is to promote justice and honesty without giving recognition to the contract.

■ In the case before us, the plaintiff is charged with the knowledge of the incapacity of the defendant to contract, except as authorized by the law, and it is to that extent *in pari delicto* with the defendant, although the defendant occupied a more confidential and favorable relation in securing legal sanction for its acts. The plaintiff is, how-

ever, the least guilty party since the failure to observe the legal conditions required for the authorized creation of the contract lies more nearly at the door of the county. In selling the equipment to the county for perfectly lawful objects, with no charge of fraud or bad faith involved, the plaintiff is guilty of no wrong. The plaintiff has brought upon itself the penalty of having its contract declared void. No other penalty is provided by the Constitution or the statutes. There is no provision that it should also lose its property, or the use thereof.

The contract for the sale of the fire equipment was not *malum in se*. There was nothing inherently evil in such sale, nor in the provision for the payment thereof over a period of years. There was no evil or vice in the object of the contract to provide the county with equipment for fire protection, nor in the acts and things forming its basis. There is nowhere in the pleadings or in the briefs any allegation of fraud or bad faith in the making of the contract. The provision of the contract for the future payment was *malum prohibitum*. It was bad because it was prohibited by law.

We conclude that in this case the contract was merely invalid and void, and not illegal; and that the parties were not *in pari delicto* as to any moral wrong in connection with the object and substance of the contract. While neither party may rely upon the contract, or upon any of its provisions, we must determine what is to become of the very valuable property, the title to which remains in the plaintiff, with actual possession in the defendant.

For about six years the defendant has retained possession, and has made use of the equipment in the performance of lawful and necessary duties. Although it has paid a part of its value to the plaintiff, it has had the benefit of the whole property. By means of it, it has rendered a beneficent and useful service to its citizenry, which otherwise it would have neglected, or would have performed at an expense to its constituency. Shall it be allowed to receive, retain, use, and have the benefit of the property of the plaintiff, with-

out fair compensation? Will it promote public policy to sanction the contention of the defendant, or offend it the more by the failure to render equal justice between the parties?

On the question of recovery of the specific property or rent for the use thereof, this case appears to be one of first impression in this State. The cases cited from this State, as hereinbefore pointed out, involve questions of recovery on the contract, or on an implied contract. There are, however, many cases from other States and from the Supreme Court of the United States, involving the points in issue here.

We find that the American courts have repeatedly held that the obligation to be just rests upon all persons, natural and artificial. They have declined to give judicial approval to the extent of permitting an individual, a corporation, or a municipality to receive and hold the property of another, with knowledge that compensation is expected therefor, and to refuse to return it or to pay compensation for its use, where the object of the original transaction was not illegal.

In the early American case of *Marsh* v. *Fulton County*, 10 Wall. (77 U. S.) 676, 684, 19 L. Ed. 1040, a distinction is drawn between the right to enforce a contract created contrary to a statute and the right to recover the property secured under such contract. Said the Court: "The obligation to do justice rests on all persons, natural and artificial, and if a county obtain property or money of others without authority, the law, independent of any statute, will compel restitution or compensation."

Under the Constitutions of Kentucky and Utah, containing provisions similar to ours, we find this principle applied in cases almost exactly similar in point of facts. In the *City of Bardwell* v. *Southern Engine & Boiler Works*, 130 Ky. 222, 113 S. W. 97, 101, 20 L. R. A. (N. S.) 110, the city was not permitted to retain possession of a valuable engine purchased for its electric light plant, under a contract with reservation of title, after two-thirds of the purchase price

had been paid. The court directed that the plaintiff should have the right to take the engine out of the plant, and sell the same in order to realize the balance of the purchase price. It was there said: "The purpose of the Constitution is not to enrich municipalities at the expense of innocent people who deal with them, and when they repudiate their bonds, they must act honestly.

"It would be manifestly unjust and inequitable under the circumstances presented by this record to permit the city to keep this engine and not pay for it."

In *Floyd County* v. *Owego Bridge Company,* 143 Ky. 693, 137 S. W. 237, decided in 1911, the same court, citing *Marsh* v. *Fulton County, supra,* held that Floyd county would not be permitted to retain bridges built by the defendant for the county, without complying with constitutional provisions, and gave the defendant the right to remove them.

In *Moe* v. *Millard County,* 54 Utah 144, 179 P. 980, decided in 1919, the Supreme Court of that State held, where heating, plumbing and ventilating fixtures had been installed in school buildings, without complying with the constitutional provision for the payment therefor, while the claimant could not recover upon the express contract, or upon a *quantum meruit,* it was entitled to retake so much of the property as would be equal to the balance owing on the purchase price.

In *Shaw* v. *Board of Education* (1934), 38 N. M. 298, 31 P. (2d) 993, 996, 83 A. L. R. 432, the court, referring to a similar principle, said: "It seems well established that a municipality cannot acquire property under an invalid contract, and, by virtue of said invalidity alone, avoid paying either the contract price or the reasonable value of the property, at the same time retaining the property." In this case and in the *City of Bardwell Case, supra,* it was held that it was not necessary for the claimant to return the money paid on account of the purchase price as a prerequisite to the recovery of the property.

In *Chapman* v. *County of Douglas, supra,* Chapman sold to the county of Douglas, Nebraska, a farm, under a con-

tract which provided for the payment of the balance of the purchase price in the future, without compliance with statutory provisions. The transaction was declared to be contrary to law insofar as the manner of payment was concerned. Holding that Chapman must either have compensation or restoration of his property, the county having refused to make the deferred payments, the court quoted with approval from *Pimental* v. *San Francisco,* 21 Cal. 351, 362, wherein it was said:

" 'If the city obtains the money of another by mistake or without authority of law, it is her duty to refund it from this general obligation. If she obtains other property which does not belong to her, it is her duty to restore it, or if used by her, to render an equivalent therefor from the like obligation. The legal duty springs from the moral duty to make restitution.' "

In *Yaffee Iron & Metal Co.* v. *Pulaski County,* 188 Ark. 808, 67 S. W. (2d) 1017, 1018, it was said: "It is immaterial that the contract was void. Appellee cannot accept and hold appellant's money, also retain the bridges, and at the same time plead the invalidity of the contract in bar of recovery. This contention has been definitely and certainly determined by this court in a number of cases. * * * As a matter of common honesty, a county should not be permitted to accept and hold money as the purchase price for material purchased, and at the same time retain ownership and control of the materials so purchased, and assert, in bar of any recovery, that no previous appropriation had been made therefor."

The inducement for the delivery of the equipment was a promise to make payment therefor. This promise having been held to be void, did not change the status of the ownership of the property, and the county must have known that it could not acquire title without making payment therefor. It did not return the equipment, nor such part thereof as amounted in value to the balance remaining unpaid. It appears not only to have kept the property, but to have used

it for governmental purposes, and accepted its benefits. Nor does it deny that the title remains in the plaintiff.

The Federal courts have consistently followed the doctrine found in *Marsh* v. *Fulton County, supra,* and *Chapman* v. *County of Douglas, supra.* On January 26, 1937, in the Texas case of *City of Floydada* v. *American-LaFrance & Foamite Industries, Inc.* (C. C. A. 5), 87 F. (2d) 820, 821, a contract was held void because of the failure to observe a constitutional provision in creating the debt, and no recovery was permitted upon the contract, nor upon the *quantum meruit.* On the question of returning the property and paying compensation therefor, Holmes, Circuit Judge, said: "The title to the fire truck never passed to the city, but remained in the would-be vendor; and since its actual possession was transferred to the latter, and by it the chattel was put to beneficial use, the law implied an agreement to pay a reasonable compensation as hire, the amount thereof being within the current revenues of the city."

The logic and reasoning given in the foregoing cases appear to us conclusive. The integrity of human rights and property rights, and the promotion of an honorable public policy equals, if it does not supersede, technical rules of public policy. It is the duty of the courts to render impartial justice and to implant the spirit of common honesty in dealings between men and the artificial creatures of men. As justice is the fundamental aim of the courts, we must liberally construe each law, each ground of logic and reason, to attain it. When for any reason, technical or otherwise, faith is lost in that effort, or in the results so sought to be achieved, the foundation of our society becomes undermined. Upon the peculiar circumstances of each case a conclusion must be reached, for in any one case a single ground of reason will serve to set it apart from those otherwise similar. Public policy, in general, is less offended by the common application of these principles than by the application of technical rules to the enforcement of a public policy based upon a political theory of economics. Elementary and fundamental principles of honesty and fair-dealing as conceived in the

Anglo-Saxon mind, and as embodied in our jurisprudence, constitute the warp and woof of public policy. It implies the enactment of just laws for the public good, and we conceive of no higher duty of the courts than to so interpret the law as to give both adherence and voice to the dictates and commands of justice. Justice and honesty furnish spirit and flavor to law. With the reason of the law they make the life of the law. They inspire confidence and respect for law and its application. When justice and honesty are left out of the law, the law breaks down, and with it falls the mainstay of modern civilization.

It is evident that Mr. Justice Hudgins had these principles in mind when he wrote the opinion in *American-LaFrance & Foamite Industries, Inc.* v. *Arlington County,* 164 Va. 1, 178 S. E. 783, and left open for adjustment between the parties the questions here raised.

Now the equipment is no longer new, and the sale thereof and the application of the proceeds to the purchase price would provide a more or less empty return. There can be no such recognition of the terms of the conditional sales contract. The equipment should be returned to its owner, with consideration given both to compensation for its use while retained by the county, and to the payments made by it. We cannot lend our aid to promote any other condition any more than we can enforce the invalid contract.

 It is much to be desired that there should be an end to this litigation, as to all litigation. It is unfortunate that the record is not in such form that this court can pass upon the proper amount of rent and compensation for use of the property in question. Under the issues in the case, we are limited to those raised by the record, and the sole issue is whether the demurrer should be sustained.

For the reasons given and under the law and facts of the case, we are of opinion that the court erred in overruling the demurrer, and the ruling of the trial court is reversed.

 In the effort to end the litigation, we are constrained to direct that when this case shall be remanded for further proceedings herein, the trial court will direct that the chat-

tels of the plaintiff shall be forthwith returned and delivered to the plaintiff, and that it will direct an issue to be tried as to the amount of rent or compensation the plaintiff is entitled to receive from the county for the retention and use of the plaintiff's property. The plaintiff should be allowed a fair compensation, at so much per month, considering the value and character of the property, the use thereof, and its depreciation while held by the county, plus interest thereon, which allowance should be offset by the application of all cash payments made by the county, to the oldest items in the account, as of the time when such payments were made.

*Reversed and remanded.*