153 S.E.2d 270 (1967)
207 Va. 827
Paul W. GORDON et al.
v.
BOARD OF SUPERVISORS OF FAIRFAX COUNTY et al.
Supreme Court of Appeals of Virginia.
March 6, 1967.
*272 Randolph W. Church, Jr., Fairfax (Hardee Chambliss, Centreville, on brief), for appellants.
Robert C. Fitzgerald, Fairfax (H. Kendrick Sanders, Jr., Fairfax, Ralph G. Louk, Commonwealth's Atty., Fitzgerald & Smith, Fairfax, on brief), for appellees.
Before Eggleston, C. J., and SPRATLEY, BUCHANAN, SNEAD, I'ANSON and GORDON, JJ.
I'ANSON, Justice.
This is an appeal from a decree entered in a declaratory judgment proceeding sustaining a demurrer and dismissing an amended bill of complaint filed by the plaintiffs, Paul W. Gordon and Harriet R. Gordon, "as taxpayers for themselves and all others similarly situated" and "as landowners adversely affected," against the Board of Supervisors of Fairfax County (Board), the Fairfax County Airport Authority (Authority), the individual members thereof, and others. Plaintiffs prayed, among other things, that the court declare that under the provisions of the Fairfax County Airport Authority Act, Chapter 642, pp. 967-975, Acts of 1964, the Board had no statutory power to lend $20,000 to the Authority for the preliminary costs incident to the construction of an airport; that even if the Board had the power to lend the money, it had not adopted a proper resolution authorizing the disbursement of the funds from the county treasury; that the Board had abused its discretion; and that the Authority had no power to accept the loan.
The pertinent provisions of the Airport Authority Act are as follows:
Section 2 states that the revenue bonds issued by the Authority shall be payable solely from tolls and revenues. All expenses incurred in carrying out the provisions of the Act "shall be payable solely from funds provided under the provisions of the Act."
Section 3 provides that if the Fairfax County Board declares that there is a need for an airport in the county, it may create an airport authority. The exercise by the Authority of the powers conferred by the Act is deemed to be the performance of an essential governmental function. The remainder of the section prescribes the organization of the Authority.
Under the relevant subsections of Section 4 the Authority is given the following powers: (d) to issue revenue bonds payable solely from tolls and revenues; (e) to fix and collect tolls and fees for the use of the airport; (f) to acquire and accept real and personal property, including gifts and contributions from political subdivisions; (h) to enter upon any land for the purpose of making surveys, soundings, borings and examinations; (j) to enter into grant agreements with the federal government for airport planning, development and operation under the Federal Airport Act; (k) to do all things necessary or convenient to carry out the powers expressly granted; and (l) to borrow money and to issue evidence of indebtedness of the Authority.
Section 5, dealing with the acquisition of property, empowers Fairfax county to lease, lend, grant or convey real property to the Authority and gives the Authority the power of eminent domain.
Section 13 states: "This Act, being necessary for the welfare of the Commonwealth and its inhabitants, shall be liberally construed to effect the purposes thereof."
Pursuant to the provisions of section 3 of the Act, the county Board, on July 3, 1964, declared that there was a need for an airport in the county, created the Authority, and appointed the members.
Subsequently the Authority announced its intention to construct and operate an airport on property owned by plaintiffs and other landowners.
At its meeting on May 19, 1965, the Board adopted a motion to lend $20,000 to the Authority, the amount requested by it to compensate *273 engineers engaged to prepare construction drawings and specifications in order to apply for a grant under the Federal Airport Act. It was stipulated that the loan would be repaid from the sale of bonds to be issued by the Authority.
Plaintiffs contend that the trial court erred in sustaining the demurrer and holding (1) that the Board had power to make the loan; (2) that a proper resolution was adopted; (3) that the Board did not abuse its discretion; and (4) that the Authority could accept the loan.
Defendants say (1) that plaintiffs lack standing to prosecute this appeal; (2) that the question of the Board's power to lend money to the Authority was rendered moot by the enactment of Chapter 132, p. 231, Acts of Assembly, 1966; and (3) that under the principle of res judicata plaintiffs cannot question the legality of the loan.
We shall first consider defendants' contention that plaintiffs lack standing to prosecute this appeal "as taxpayers for themselves and all others similarly situated."
Defendants rely upon Nicholas v. Lawrence, 161 Va. 589, 171 S.E. 673 (1933). There the trial court sustained a demurrer to a petition filed by taxpayers who sought the removal of the tie-breaker of the Norfolk County Board of Supervisors. After observing that the Code provided a procedure for the removal of officials, we said that the interest appellants had as residents and taxpayers was insufficient to make them proper parties to the proceeding they had initiated. Thus, since the taxpayers were not proper parties to the proceeding below, we concluded that they could not be aggrieved by the judgment rendered therein within the meaning of § 6336, Code of 1919 (now § 8-462(3) (c) Code of 1950, 1957 Repl.Vol.), and dismissed the writ.
The opinion in Nicholas does not refer to our earlier decision in Roper v. McWhorter, 77 Va. (2 Hans.) 214 (1883), where we said that taxpayers have the right to resort to equity to restrain local government officials from exceeding their powers in any way which will injuriously affect the taxpayers, such as making an unauthorized appropriation of corporate funds.
Subsequent to Nicholas we have held that taxpayers could seek equitable relief to prevent issuance of bonds which they alleged would result in an illegal tax burden. Appalachian Electric Power Co. v. Town of Galax, 173 Va. 329, 333, 4 S.E.2d 390, 392 (1939); Vaughan v. Town of Galax, 173 Va. 335, 341, 4 S.E.2d 386, 389 (1939). Compare, Sauer v. Monroe, 171 Va. 421, 199 S.E. 487 (1938), where we said a taxpayer may not sue on behalf of a municipality to recover money which he contends has been illegally disbursed without first requesting the proper authorities to sue, or without showing that such a request would have been unavailing.
Moreover, it appears that taxpayers' suits to test the legality of expenditures by local governments are permitted in virtually every state. Note, Taxpayers' Suits: A Survey and Summary, 69 Yale L.J. 895, 896 n. 7, 902 (1960); Jaffe, Standing to Secure Judicial Review: Public Actions, 74 Harv. L.Rev. 1265, 1278 (1961).
We hold that plaintiffs have standing to prosecute this appeal.
Defendants say that the question of the Board's power to lend money to the Authority is now moot as a result of the enactment of Chapter 132, p. 231, Acts of Assembly, 1966, which added the following section to the Code:
"The governing body of a county in this State may give, lend or advance in any manner that to it may seem proper funds or other county property, not otherwise specifically allocated or obligated, to any authority created by such governing body pursuant to law." Code § 15.1-511.1 (1964 Repl. Vol., 1966 Supp.).
*274 We do not agree with defendants' contention. There is nothing in the statute adopted in 1966 to indicate that it was intended to be a "curative statute" designed to validate the acts of the Board if it did not possess pre-existing power. 2 Sutherland, Statutory Construction, § 2214 (3d ed. Horack 1943); 50 Am.Jur., Statutes, § 481, p. 503.
It should be noted, however, that the passage of a statute expressly conferring power on a political subdivision does not necessarily preclude the pre-existence of the power. Hopkins v. City of Richmond, 117 Va. 692, 703, 86 S.E. 139, 142 (1915), overruled on other grounds Irvine v. City of Clifton Forge, 124 Va. 781, 97 S.E. 310 (1918).
Defendants next say that under the doctrine of res judicata the plaintiffs are barred from questioning the authority of the Board in this case by the final decree in an injunction proceeding instituted by the Authority against the Gordons, plaintiffs in the present suit, and other landowners.
It is essential to the application of the doctrine of res judicata that the identical issue sought to be relitigated has been settled by a valid final judgment in a proceeding to which the identical persons or their privies were parties in the identical capacities in which they appear in the later litigation. Patterson v. Anderson, 194 Va. 557, 564, 74 S.E.2d 195, 200 (1953).
In the injunction suit brought by the Authority the trial judge enjoined the Gordons and other landowners from obstructing representatives of the Authority from entering upon their lands for the purpose of making surveys, soundings, borings and examinations. The landowners did not contest the power of the Authority to enter upon their lands for the purposes authorized by section 4(h) of the Airport Act. Their objection was that the Authority was not financially able to compensate them for any damage which might be done. Not only was the issue of the Authority's financial ability not decided by the court, but the landowners could not defend on the ground that the Authority might have no money to pay for the land taken or that it would incur an indebtedness beyond its ability to pay. Light v. City of Danville, 168 Va. 181, 197, 190 S.E. 276, 282 (1937). Hence the doctrine of res judicata is not applicable here.
We now turn to plaintiffs' first contention, that the Board did not have the power to lend $20,000 to the Authority to be used for the preparation of site drawings and specifications for the airport.
In determining whether the Board had the power to lend the money to the Authority, we are guided by the general principle that the powers of boards of supervisors are fixed by statute and are only such as are conferred expressly or by necessary implication. Johnson v. Goochland County, 206 Va. 235, 237, 142 S.E.2d 501, 502 (1965); 5 Mich.Jur., Counties, § 34, p. 112.
At the time the loan was made the Airport Authority Act did not expressly give the Board the power to lend money to the Authority, and there was no other express statutory authorization. Hence our inquiry must be directed to whether the Board possessed the power to make the loan by necessary implication from the expressed powers found in the Act. The conflicting decisions as to what powers are necessarily implied from particular expressed powers indicate that there is no specific test to determine this question. See, 2 McQuillin, Municipal Corporations, § 10.12, p. 773 (3d ed. Rev. 1966); 1 Antieau, Municipal Corporation Law, § 5.03, p. 221 (Rev. ed. 1966).
Plaintiffs argue that since the Act expressly authorizes the Board to lend real property to the Authority and is silent as to the power to lend money, this was indicative of the legislative intent that the Board was not to have such power. As further evidence of the legislative intent, they point to § 10, p. 976, Chapter 643, Acts *275 of Assembly, 1964, of the County Industrial Development Authority Act, and Code § 15.1-1250(hl), 1964 Repl.Vol., of the Water and Sewer Authorities Act, which expressly empowered counties to lend money to authorities.
However, it must be remembered that the maxim that the mention of one thing implies the exclusion of another is an aid to statutory construction, not a rule of law. 50 Am.Jur., Statutes, § 245, p. 240. While section 5 of the Airport Act does expressly empower the Board to lend real estate and is silent as to money, it does not necessarily follow that the legislature intended to exclude the power to lend money to the Authority. Similarly, comparison with the Industrial Development Authority Act and the Water and Sewer Authorities Act is not conclusive on the question of the intent of the legislature with respect to such power when the Airport Act is read as a whole and its purposes are considered.
To determine whether the Board's power to lend the money to the Authority is necessarily implied, we must look to the purposes and objects of the Act in question. 3 Sutherland, Statutory Construction, § 5505, p. 41 (3d ed. Horack 1943). Section 13 directs that the Act be liberally construed to effect the purposes thereof.
Section 3 expressly authorizes the Board to create the Airport Authority. In undertaking the project for which it was created the Authority would necessarily be in need of funds. However, in the early stages of the development of the airport, the Authority would not have available bond revenue or tolls and rentals. Furthermore, a grant from the federal government, which the Authority was permitted to accept under section 4(j) of the Act would provide only a portion of the advance planning and engineering costs. 49 U.S.C. §§ 1103, 1107a, 1113. Thus if the Authority could not look to the Board for an advance of funds to get the project started, the Board would probably have created an ineffective agency, which obviously could not have been the intent of the legislature. Since the Act authorizes the Authority to receive gifts of real and personal property from a political subdivision (section 4(f)) and expressly authorizes the Board to lend real property (section 5), the Act contemplates that the Board would provide the Authority with the necessary assistance to effect the purposes of the Act. Hence, we conclude that the power of the Board to lend funds to the Authority for organizational expenses and planning and development costs is necessarily implied by the expressed power to create the Authority and to assist it in getting started.
Although we have said that the enactment in 1966 of § 15.1-511.1 does not preclude the pre-existence of the power, nor is it a curative statute, it is at least some evidence that our conclusion that the Board had the power to make the loan is not contrary to the legislative intent with respect to the existence of the power.
Plaintiffs argue that the motion adopted by the Board to appropriate the money lent to the Authority was not in the form of a resolution, as required by Code § 15.1-605(b), 1964 Repl.Vol., which reads:
"No money shall be drawn from the treasury of the county, nor shall any obligation for the expenditure of money be incurred, except in pursuance of appropriation resolutions. * * *"
Obviously the purpose of the subsection is to insure that the director of finance makes no disbursements from the treasury until the item is approved by the Board of Supervisors.
The adoption of the motion by the Board constitutes substantial compliance with the requirement for an appropriations resolution. The record shows that the Board met as a collective body and passed a motion to lend the money. We do not think the failure to use the words "resolved" *276 or "resolution" is a fatal defect in the appropriations procedure.
Plaintiffs say that even if the Board had the power to lend the money, the loan in this case amounted to an abuse of discretion.
They cite Roper v. McWhorter, supra, 77 Va. at 224, where it was alleged that members of the city council and county board of supervisors acted in bad faith and in violation of their public trust in agreeing upon terms of a lease of ferries to a private party. The court said there that even assuming that the city and county had the power to lease the ferries, the circumstances surrounding the execution of the lease justified the court in declaring it void.
The facts of this case are clearly distinguishable from Roper. The Board here was dealing with an authority created by it to meet the needs of the county. Since the loan was for the purpose of aiding the Authority to perform an essential governmental function, there has been no violation of public trust or abuse of discretion.
In Fairfax County Development Authority v. Coyner, 207 Va. 351, 360, 150 S.E. 2d 87, 95 (1966), we upheld an advance of funds made by the Board to the Industrial Development Authority to cover expenses pending the sale of revenue bonds, which amount the authority would reimburse the county upon the sale of the bonds. The Act in Coyner expressly granted the power to appropriate funds, and that power is implied here. However, once the power is found to exist here, our ruling on the loan in Coyner controls this point.
Plaintiffs' final contention is that the Authority was barred by the Act under which it was created from accepting the loan.
They do not dispute that the Authority has been granted the power to borrow, for section 4(l) empowers it "to borrow money and to issue bonds * * * or other evidence of indebtedness." They say that the loan from the Board exceeded the limits placed upon the Authority to incur obligations by the second paragraph of section 2, which provides, in part, that "no liability or obligation shall be incurred by the Authority hereunder beyond the extent to which moneys shall have been provided under the provisions of this Act."
Plaintiffs argue that the phrase "shall have been provided" means that the Authority must "have sufficient funds on hand before incurring liabilities or obligations." The effect of their interpretation would be that the Authority could not issue bonds until it had a sum equal to the amount of bonds to be issued.
We do not agree with plaintiffs' argument. The Authority is not required to have funds on hand to meet its obligations before it borrows any money. Furthermore, it is contemplated that the loan will be repaid to the county from the revenue bonds to be issued.
For the reasons stated, the judgment is
Affirmed.
GORDON, J., dissenting.
SNEAD, J., concurs in this dissent.
GORDON, Justice (dissenting).
For many years this Court has adhered to the rule that "[t]he powers of the Boards of Supervisors are fixed by statute and are only such as are conferred expressly or by necessary implication". Board of Supervisors of Henrico County v. Corbett, 206 Va. 167, 174, 142 S.E.2d 504, 509 (1965), and cases cited therein; American-La-France & Foamite Industries v. Arlington County, 164 Va. 1, 178 S.E. 783 (1935). Today, in my opinion, the Court has failed for the first time to follow that rule.
Admittedly, the Fairfax County Airport Authority Act did not give the Fairfax Board express power to lend money to the Fairfax County Airport Authority. Unable *277 to find express authority, the majority concludes that the grant of power to create an authority necessarily implies the power to lend money to the authority. I believe this reasoning is unsound as a general proposition, and peculiarly unsound in this case for two reasons.
First, the General Assembly, when providing for the creation of other authorities, has seen fit to empower counties to lend money to the authorities they create. For example, the Virginia Water and Sewer Authorities Act expressly empowers a creating body to make loans: "Each authority created hereunder * * * is hereby authorized and empowered: * * * To borrow * * * [and] to issue its notes, bonds or other obligations * * *. Any county, city, or town which has formed or joined an authority may lend money to such authority." [Emphasis supplied] Va. Code Ann. § 15.1-1250(hl) (Repl. vol. 1964).
In the comparable section of the Act authorizing the creation of the Fairfax County Airport Authority, the General Assembly withheld any authority for Fairfax County to make loans: "The Authority [the Airport Authority] is hereby authorized and empowered: * * * [T]o borrow money and to issue bonds, refunding bonds, notes, certificates or other evidence of indebtedness of the Authority." Va. Acts of Assembly 1964, ch. 642, at 967, 970.
The majority apparently assumes the General Assembly inadvertently failed to give Fairfax County authority to make loans when it enacted the Fairfax County Airport Authority Act. I believe we should assume the General Assembly acted consciously, not inadvertently, in the absence of compelling reason to conclude it intended to say what it did not say.
The majority concedes that the enactment of Code § 15.1-511.1 in 1966, which gives general authority to counties to lend money to authorities created by them, cannot validate the loan made by Fairfax County to the Authority in 1964, because Code § 15.1-511.1 is not a "curative statute". Va. Acts of Assembly 1966, ch. 132, at 231; Va.Code Ann. § 15.1-511.1 (Supp.1966). After making that concession, the majority says the enactment of § 15.1-511.1 "is at least some evidence that our conclusion that the Board had the power to make the loan is not contrary to the legislative intent". "Evidence" that the General Assembly did not have a contrary intent in 1964 cannot lend support, however, to a holding that the General Assembly conferred a power in 1964 by necessary implication.
Secondly, the majority holds that the Fairfax County Airport Authority Act necessarily implied the County's power to lend to the Authority, without any showing that the power was necessary. This implication can be deemed necessary only upon a showing that the Authority could not have functioned without borrowing from the County, and the General Assembly knew the Authority could not have functioned without borrowing from the County. The majority can point to no such showing. The majority can say only: "[I]f the Authority could not look to the [Fairfax] Board for an advance of funds to get the project started, the Board would probably have created an ineffective agency, which obviously could not have been the intent of the legislature." [Emphasis supplied] By these words, the majority does not say that the County's power to lend must necessarily be implied to carry out the intent of the Act; the majority suggests only that the power might be implied.
Furthermore, the majority has no basis for assuming that the Authority could "look" only to the County "for an advance of funds to get the project started". We know from the record in a pending case that another authority obtained temporary financing from a bank to defray the same type of expenses as were defrayed by Fairfax County's loan to the Airport Authority. Industrial Development Authority of the City of Chesapeake v. Harold F. Suthers, Chairman, etc., Record No. 6589. The bank lent money to the Chesapeake Authority to *278 defray (among other things) "the cost and expenses of site preparation * * * [and] architectural and engineering fees". The purpose of Fairfax County's loan to the Airport Authority was "to compensate the engineers in accordance with their previous agreement for the accomplishment of preparation of site drawings and specifications * * *"
I would therefore reverse the decree sustaining the demurrer and dismissing the plaintiffs' amended bill of complaint.
SNEAD, J., concurs in this dissent.