# Wytheville.

## FULKERSON AND OTHERS v. TAYLOR AND OTHERS.

### June 19, 1902.

1. CHANCERY PRACTICE—*Enforcement of Judgments—Alienees—Burden of Proof.*—The burden is upon the judgment creditor seeking to subject land in the hands of his debtor's alienee for value to show that the land is liable. If the bill alleges a sale and no conveyance, but does not allege an unrecorded written contract, and the answer denies a written contract, and avers a verbal contract and such performance thereunder prior to May 1, 1888, as would have entitled the purchaser to specific performance as against his vendor, there can be no recovery unless the averments of the answer are overcome.

2. SUBROGATION—*Payment of Liens—Volunteers.*—A purchaser of real estate who is compelled to pay a vendor's lien thereon for his own protection is not a volunteer, but will be subrogated to the rights of such vendor, and, if necessary, the lien will be kept alive for his protection.

3. PERSONAL JUDGMENTS—*Descriptive Words.*—The word "curator" annexed to the name of a defendant against whom a decree is rendered is descriptive merely, and the decree is a personal decree, although there be superadded a direction to the defendant "as curator" to collect and apply certain funds to its payment.

4. LIMITATION OF ACTIONS—*Judgments—Voidable Execution.*—An execution issued on an unconditional decree for money, in contravention of the agreement of the parties entered of record, is voidable only, and is sufficient to stop the running of the act of limitations on the decree.

5. JUDGMENTS—*Docketing—Indexing—Allegation and Proof of Indexing.*—An allegation in a bill that a judgment sought to be enforced was duly docketed is a sufficient allegation of the indexing of the judgment as required by section 3561 of the Code, but if the fact of indexing be put in issue it must be proved, and it would seem that this is not sufficiently done by the mere production of an abstract of

the judgment which does not certify that it was duly docketed, and makes no reference to the indexing.

Appeal from a decree of the Circuit Court of Lee county, pronounced June 8, 1901, in a suit in chancery wherein the appellee, Eliza A. Taylor, was the complainant, and appellants and others were the defendants.

*Reversed.*

The opinion states the case.

*C. T. Duncan* and *B. H. Sewell,* for the appellants.

*R. T. Irvine* and *L. T. Hyatt,* for the appellees.

KEITH, P., delivered the opinion of the court.

Eliza A. Taylor filed her bill in the Circuit Court of Lee county, from which it appears that in March, 1893, she recovered a judgment in that court against L. D. Fulkerson for the sum of $432, with interest, which was duly docketed in the clerk's office of the County Court of said county on the 27th of March, 1893. She further shows that by deed dated April 3, 1888, James W. Orr, commissioner in a chancery cause, conveyed to L. D. Fulkerson a lot of land containing three acres, which deed was admitted to record on the 14th day of October, 1894; that Fulkerson afterwards sold said parcel of land to I. R. Thomas, and put him in possession thereof, but made no conveyance of it to him, and afterwards the heirs of Thomas sold and conveyed this lot to C. M. Morgan, who sold to James M. Wheeler, who having died, this lot was, upon partition of his real estate, assigned to his daughter, Mollie Kesterson, at whose request Fulkerson and wife and Morgan and wife, by deed dated August 31, 1894, conveyed it to C. R. Kesterson, her husband. This deed was duly recorded on the 9th of October, 1894. This lot is known in the record as the "3-acre mill tract."

It further appears that James W. Orr, commissioner, on the

11th of May, 1892, conveyed to L. D. Fulkerson by deed of that date four parcels of land which Fulkerson had purchased some years before in the chancery cause of *Richmond's Admr.* v. *Bales and Others.* Fulkerson, between the date of his purchase and the 24th of September, 1889, sold lots 1, 2 and 3, and one-half interest in lot No. 4 to John C. Vanoy, who went into possession thereof; and to him Fulkerson executed a title bond which was never recorded. Vanoy and wife, on the 24th of September, 1889, conveyed a strip of this land as a right of way to the Louisville & Nashville Railroad Company. This deed is recorded in Lee County Court clerk's office. Afterwards, Fulkerson and wife, and Vanoy and wife, by deed dated June 24, 1892, conveyed these three lots and the one-half interest in the fourth lot to Moses L. and James M. Ely. This deed was duly recorded on the 17th of December, 1894. The other one-half interest in the fourth lot was sold by Fulkerson and wife to their son, C. E. Fulkerson, on the 20th of June, 1892, and this deed was recorded on the 11th of March, 1895. This one-half lot was conveyed by C. E. Fulkerson to Granville Smith, and by Smith to William A. Crockett, who now owns it.

It appears that L. D. Fulkerson was at one time the owner of three other tracts of land situated in Lee county, one of which was conveyed to him by David Chadwell, by deed of April 21, 1873, duly recorded in Lee county, containing 113 acres, and a tract of 80 acres which was conveyed to him in an undivided condition by the same deed, and which was afterwards conveyed to him by proper metes and bounds by J. M. Wheeler by deed of January 30, 1875. The other tract referred to contains 51 acres, and was conveyed to Fulkerson by H. S. Hoskins by deed of February 6, 1878. The tracts containing 113 and 51 acres were conveyed by Fulkerson to J. M. Wheeler by deed dated October 4, and recorded November 10, 1887. August 21, 1889, Wheeler conveyed a strip of this land to the Louisville & Nashville Railroad Company as a right of way. By deed dated February 5, 1890, Fulkerson and wife sold and conveyed

to James M. Wheeler the 80-acre tract above mentioned. Wheeler, Sr., died without ever having parted with any of said land, except that parcel which he had conveyed to the L. & N. R. R. Co. for a right of way. After his death, his real estate was partitioned among his heirs, and these lands were assigned to his son, James M. Wheeler, Jr.

The bill sets out a number of judgments, prays that Fulkerson and his several aliences may be made parties defendant, that all proper accounts may be taken, and the assets marshalled so that each creditor may receive that to which he is entitled. All of the judgment creditors alluded to came in and were made parties to the suit.

Certain of the defendants filed answers, to which the plaintiffs presented numerous exceptions, and the cause coming on to be heard upon the bill, answers, exceptions, cross-bills, exhibits, depositions and reports, the court decreed that none of the judgments sought to be enforced were liens upon the "3-acre mill tract" owned by the defendant, Mollie Kesterson, being of opinion that the proof showed a verbal contract of purchase by Thomas from Fulkerson prior to May 1, 1888, followed by payment of all the purchase money, and by such improvements thereon and possession thereof as entitled Joseph R. Thomas and those claiming under him to hold the land free from the claims of Fulkerson's creditors.

The court was of opinion, and so decreed, that the judgment of Charles E. Baylor, rendered September 3, 1887, for $1,979.91, and certain other judgments set out in the decree of subsequent date, were liens upon the land conveyed by Fulkerson and wife and Vanoy and wife to Moses L. and James M. Ely; upon the strip conveyed by Vanoy and wife to the L. & N. R. R. Co.; and upon the parcel of land conveyed by Fulkerson and wife to C. E. Fulkerson, and that the Baylor judgment was a lien on the 80 acres of land conveyed by Fulkerson and wife to James M. Wheeler, Sr., and on the two tracts of 113 acres and 51

acres conveyed by Fulkerson and wife to Wheeler by deed of October 4, 1887, and also on the strip conveyed by Wheeler to the L. & N. R. R. Co. by deed of August 21, 1889; and it appearing that these lands would not rent for enough within five years to pay off and discharge the judgments, they were decreed to be sold. From this decree the L. & N. R. R. Co., and certain other parties aggrieved, applied for and obtained an appeal.

The first question which we will consider is upon the error assigned by the appellees to so much of the decree as exempts the "3-acre mill tract" from their demands.

We are of opinion that the decree of the Circuit Court is right upon this point. It was for the plaintiffs to state and prove a case which entitled them to recover. Fulkerson purchased the "mill tract" from Orr, commissioner, on the 3d of April, 1888. It seems that as early as July 7, 1879, Orr, commissioner, in the case of *Chadwell* v. *Chadwell et als.*, pending in the Circuit Court of Lee county, sold this parcel of land to Fulkerson, and the sale was duly confirmed at the November term. About September, 1883, Fulkerson sold this tract of land to Thomas and put him in possession, and Thomas, and those claiming under him, paid the whole purchase price and made extensive improvements upon the land, and it is not denied that as between themselves and Fulkerson they were entitled to the specific execution of the contract of sale and to a deed investing them with the title. If the creditors of Fulkerson can, under such circumstances, subject this property, it must be by force of the statute law with respect to the recordation of certain instruments. The bill filed in this case does not allege that there was any written evidence of the contract of sale from Fulkerson to Joseph R. Thomas. It alleges that Fulkerson sold the tract of land to Thomas, put him in possession thereof, but never made any conveyance to him, but it does not state that there was a written contract. The answer of the defendants denies that there was a written contract, and asserts that it

was a verbal one under which possession was delivered and the whole purchase price paid. The burden was upon the plaintiffs to make out their case, and the evidence upon which they relied is insufficient for that purpose. The Circuit Court held that this parcel of land was exonerated from the charge which plaintiffs sought to impose upon it, and that decree we cannot disturb upon the record before us.

The next question arising upon the appeal is as to the liability of the parcels of land purchased by Fulkerson in the chancery cause of *Richmond* v. *Bales,* sold by him to Vanoy, and known in the record as "The Ely lands."

It appears that Fulkerson owed a considerable part of the purchase money for these lands which was paid to the commissioner charged with the duty of collecting it by John C. Vanoy; that the money thus paid constituted a lien upon the land superior to any claim of Fulkerson or his creditors, is not disputed, but the contention is that Vanoy, in making the payment, was a mere volunteer who will not be protected by a court of equity.

The question was presented in the Circuit Court by an exception taken by the plaintiff to the answer of the defendant. The exception is in the following words:

"With reference to the payments made by Vanoy on Fulkerson's purchase from the commissioner in the cause of *Richmond Admr.* v. *Bales.* Even if Vanoy made these payments, as alleged, there must be the further allegation made that Vanoy was *forced* to make such payments *in addition* to the purchase money he had agreed to pay to Fulkerson, before he would be entitled to subrogation. Further, the right of subrogation is a personal right, and the railroad company cannot set it up for Vanoy. This must be done by Vanoy or his assignees."

This exception was sustained by the Circuit Court, and in this we think there was error. Vanoy found his land bound by a lien for purchase money due by his grantor, and paid it off. He did what was necessary to protect his own interest, and will not be considered in a court of equity as a volunteer.

As was said by Judge Staples in *Gatewood* v. *Gatewood*, 75 Va. 411: "But if the party making the payment does not occupy the position of surety for the debt, as a general rule he cannot claim to be entitled as assignee unless by agreement with the creditor.

"Subrogation is, however, a very different thing from an assignment. It is the act of the law, and the creature of a court of equity, depending not upon contract, but upon the principles of equity and justice. It presupposes an actual payment and satisfaction of the debt secured by the mortgage.

"But, although the debt is paid and satisfied, a court of equity will keep alive the lien for the benefit of the party who made the payment, provided he, as security for the debt, has such an interest in the land as entitles him to the benefit of the security given for its payment.

"It may be laid down as a rule of almost universal acceptance, that where there is a mortgage upon real estate, any person who has the right to redeem such mortgage, and actually does redeem it, is entitled for his indemnity to be subrogated to the lien of the mortgage, and to hold the land until he is reimbursed to the amount so paid. In such case no proof of interest on his part is necessary to keep the mortgage alive, and to give him the benefit of it. The payment of the mortgage, together with his relation to the estate, is brought in aid of his title to strengthen and uphold it.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Who, then, is entitled to redeem? It is well settled that a judgment creditor, a junior mortgagee, a purchaser of the equity redemption, a tenant in dower, a tenant by curtesy, and indeed all persons having an interest in the estate, may insist upon the redemption of the mortgage in order to the due enforcement of their claims."

And on page 414 he says: "So far has this doctrine been carried that the courts, in behalf of purchasers and others en-

titled to redemption, have re-established mortgages which have
been discharged of record in ignorance of the existence of judg-
ment liens acquired subsequent to the mortgage. In many cases
the courts will keep the encumbrance alive, or consider it extin-
guished, as will best secure the purposes of justice, and the just
intentions of the parties. Indeed, the mortgage will be kept on
foot, if necessary for the purposes of justice, although the in-
terests of the mortgagee and the equity of redemption unite in
the same person. It has been very properly said, the doctrine
of subrogation, at first applied in behalf of those who were bound
by the original security with the debtor, has been greatly en-
larged, and the principles modified to meet the circumstances of
cases that have arisen between different classes of sureties and
creditors, so as to do substantial justice and equity in each case."

In Pomeroy's Equity, sec. 791, it is said that where the legal
ownership of the land, and the absolute ownership of the encum-
brance, become vested in the same person, the intention governs
the merger in equity. If this intention has been expressed, it
controls. In the absence of such an expression, the intention will
be presumed from what appears to be the best interests of the
party as shown by all the circumstances. If his interests re-
quire the encumbrance to be kept alive, his intention to do so
will be inferred and followed. If, on the contrary, his best in-
terests are not opposed to a merger, then a merger will take
place according to his supposed intention. *Rorer* v. *Ferguson,*
96 Va. 411; *Sands* v. *Durham,* 99 Va. 263.

Having reached this conclusion, it is unnecessary to consider
other questions presented with respect to these parcels of land.

We come now to consider whether the Baylor judgment is a
lien upon the lands conveyed by Fulkerson and wife to J. M.
Wheeler by deed of October 4, 1887, recorded on the 10th of
November of that year, and on another tract of land conveyed
by Fulkerson and wife to Wheeler by deed dated February 5,
1890, recorded on April 1st of that year.

These tracts were, on September 3, 1887, the property of Fulkerson, and on that day, in the Circuit Court of Lee county, in the suit of *Edmondson* v. *Ferguson and Others*, a decree was rendered in favor of Chas. E. Baylor against L. D. Fulkerson, curator, for the sum of $1,979.91, with interest thereon from August 25, 1886, till paid, and by consent of parties by their counsel no execution was to issue upon that decree for nine months from that time, "and said Fulkerson as such curator is ordered to proceed at once to collect any money due him as such and to apply the same in discharge" of the recoveries against him.

This is plainly a personal decree against Fulkerson, the words "curator, etc.," which are superadded are merely descriptive, and the direction to him to proceed to collect any money due him as curator and apply it in discharge of this recovery does not alter its nature or affect it in any way. It was for his failure to collect money due him in his capacity as curator that the decree was rendered against him, and he having been made personally liable for the debt would, of course, have the right to collect and apply the money so collected to his own relief.

Another defence to this decree is that it was barred by the statute of limitations, no execution having been issued upon it within ten years.

It appears from the record that, on the 9th of September, 1887, six days after the decree against Fulkerson was rendered, the clerk of the Circuit Court of Lee county issued an execution upon it, formal and accurate in all respects, upon which there is the following return: "Not executed on account of sickness. S. H. Ewing, S. L. C." The contention of appellants is that this execution is void, having been issued without authority of law, the decree of the court reciting that by consent of parties by counsel no execution should issue for a period of nine months from its date. If the decree for money had been conditional no execution could have issued upon it until it became operative;

but such is not the case. The decree against Fulkerson is complete in all of its parts, and the most that can be said is that an execution was issued upon it in contravention of the consent of parties entered of record.

Was an execution sued out under such circumstances void or voidable?

In *Beale's Admr.* v. *Botetourt Justices,* 10 Gratt. 278, it was held that where, in such an action, a plea that the execution issued irregularly and unlawfully after the expiration of more than a year and a day from the time of the decree, without any previous proceeding by way of *scire facias* or otherwise to authorize the same, such an irregularity would not render the execution void, but only voidable; and it could not be avoided by pleading or proof in a collateral suit.

In that case the execution was issued contrary to law. In this case, it was contrary to the agreement of parties entered of record, certainly not a stronger case than that from which we have quoted, and we are of opinion that the execution being merely irregular and therefore only voidable, it was effectual to prolong the life of the judgment, and protect it from the operation of the statute of limitations.

Another objection taken to the judgment is that it was not duly recorded, because the record does not in terms show that it was indexed as required by law.

The bill alleges that this judgment "was duly docketed in Judgment Lien Docket No. 2, page 168, on the 9th day of September, 1887, as will more fully appear from an inspection of a certified transcript therefrom which is herewith filed as a part hereof, marked 'Exhibit No. 31.'"

The exhibit referred to sets out the date of the judgment, by what court rendered, the time of docketing, the names, description and residence of the parties, and the amount of the recovery.

The answer of the defendant Wheeler admits the recovery of the judgment, and "supposes that the said judgment or decree

was docketed in the judgment lien docket on the 9th day of December, 1887, but of these facts respondent has no personal or peculiar knowledge, and neither admits or denies the same, but calls for full and complete proof thereon."

Section 3559 of the Code requires the clerks of the county and corporation courts to keep judgment dockets, and provides what judgments shall be docketed therein.

Section 3560 is as follows: "In such docket there shall be stated, in separate columns, the date and amount of the judgment; the names of all parties thereto; the alternative value of any specific property recovered by it, the date of docketing it, the amount and date of any credit thereon; the court in which, or the justice by whom, it was rendered; and when paid off or discharged, in whole or in part, the time thereof, and by whom such payment or discharge was made, where there is more than one defendant."

Section 3561 directed that "every judgment shall, as soon as it is docketed, be indexed by the clerk in the name of each defendant, and shall not be regarded as docketed as to any defendant in whose name it is not so indexed."

Before the passage of the section just quoted, it had been held, in *Old Dominion Granite Co.* v. *Clarke, etc.,* 28 Gratt. 617, that the indexing was no part of the docketing of the judgment. It is now expressly provided by section 3561 that no judgment shall be regarded as docketed as to any defendant in whose name it is not so indexed. The bill having averred that the judgment under consideration had been "duly docketed" is to be taken as averring all that is necessary to render the docketing effectual to perfect the judgment lien. The answer calling for proof of docketing put the averment of the bill in issue, and Exhibit No. 31, which is the only proof offered, sets out in detail all that is required to be stated in section 3560, but does not state specifically that the judgment had been indexed, as required by section 3561, nor does there appear in that exhibit any

general statement broad enough to cover the entire process of docketing, including the indexing of the judgment. The bill, to repeat what we have said, alleges that the judgment was "duly docketed." If the certificate of the clerk had certified that the judgment was "duly docketed" the proof might well have been considered to be as broad as the allegation, and as being sufficient to show that all had been done that was necessary to render the judgment lien effectual; but such is not the case. There is an enumeration of particulars which omits all mention of the indexing of the judgment, and there is an absence of any general statement broad enough to cover that requirement.

The Circuit Court was of opinion that the judgment had been in all respects "duly docketed." We are indisposed to pass finally upon the question and to decide against the validity of the lien of the judgment. We are of opinion that under the circumstances the case should be remanded to the Circuit Court, with leave to the parties to introduce further evidence upon this subject.

Having reached this conclusion, it would be premature to say anything with respect to the scope and operation of the lien.

Whether or not a judgment lien binds improvements in the hands of an alienee is a question of much interest and importance, one which has not been directly passed upon by this court, and which we feel should not be decided except after full argument and careful consideration.

We are of opinion that the decree of the Circuit Court should be reversed, and a decree entered remanding the cause for further proceedings to be had in accordance with this opinion.

*Reversed.*