OUNER ANDERSON PATTERSON v. ROSETTA ANDERSON, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF PHILIP ANDERSON, DECEASED.

January 26, 1953.

Record No. 3970.

Present, All the Justices.

The opinion states the case.

*Anna F. Hedrick,* for appellant.

*J. B. Allman, B. A. Davis, III, R. G. Allman,* for appellee.

EGGLESTON, J., delivered the opinion of the court.

This case, which was before us on a former appeal,[1] involves the questions whether the appellant, Ouner Anderson Patterson,

---

[1] *Anderson* v. *Patterson,* 189 Va. 793, 55 S. E. 2d 1.

is the legitimate daughter of Philip Anderson, deceased, is entitled to a share in his personal estate, and has inherited an interest in the real estate of which he died seized and possessed.

In January, 1947, the appellant filed her bill of complaint in the court below against Rosetta Anderson, individually and as administratrix of the estate of Philip Anderson, deceased, alleging that the appellant was born on March 18, 1902, in the District of Columbia, the daughter of Ida Gray and Philip Anderson, who had previously entered into a common-law marriage in the District; that on October 6, 1902, Philip Anderson had gone "through a marriage ceremony with one Rosetta Richardson, now known as Rosetta Anderson, the defendant;" that Anderson had died on January 30, 1946, as the result of injuries received in an automobile collision; that shortly thereafter Rosetta Anderson had qualified in the clerk's office of the Circuit Court of Arlington county as administratrix of the decedent's estate; that unless ordered to do so by the court the administratrix would not account to the plaintiff for and deliver to her her share of decedent's estate, and would unless restrained "endeavor to sell and convey" certain real estate which the decedent owned at the time of his death.

The prayer of the bill was that the heirs of Philip Anderson, deceased, be determined; that the defendant administratrix be required to account to the plaintiff for and deliver to her her share of decedent's personal estate; and that a decree be entered setting forth the plaintiff's interest in the decedent's real estate and quieting title thereto in her name.

Later the plaintiff filed an amended bill, repeating the allegations in the original bill and in addition thereto alleging that she was the "legitimate daughter" of Philip Anderson and that she had been "judicially determined" to be such "by this Honorable Court in an action at law" wherein she was the plaintiff and Rosetta Anderson, "individually and as administratrix of the estate of Philip Anderson, deceased," was the defendant. Hence, she alleged, the issue of her legitimacy was *res judicata* between the parties to the present suit. The amended bill further alleged that the plaintiff was the decedent's "heir" and "owner in fee simple of the real estate" which he owned at the time of his death. The prayer of the amended bill was substantially the same as that of the original bill.

Rosetta Anderson, individually and as administratrix of the

decedent's estate, filed a joint and separate answer to the original and amended bills, in which she denied the alleged common-law marriage between the decedent and Ida Gray and that the plaintiff was the legitimate daughter of the decedent and entitled to share in his estate.

While the answer admitted that an action at law had been instituted and prosecuted by the plaintiff against the defendant in the same court and had resulted in a judgment of $1.00 for the plaintiff, it denied that in that action the plaintiff ''had been judicially determined to be the legitimate daughter of Philip Anderson.'' The answer alleged further that the defendant, Rosetta Anderson, was lawfully married to the decedent at the time of his death and was his sole distributee and heir at law.

On motion of the plaintiff the lower court entered a decree striking out the allegations in the answer denying that the plaintiff was the ''daughter'' or ''legitimate daughter'' of decedent as the result of the latter's common-law marriage with Ida Gray, on the ground that these matters had been determined in the previous action at law between the parties and were *res judicata.*

On the former appeal we reversed that decree and remanded the cause, because, as we held, it did not appear on the face of the record then before us that ''the defendant, Rosetta Anderson, individually, was a necessary party'' to the action at law and that ''her individual rights'' in the amount collected and held by the administratrix ''had been actually litigated and decided.'' The determination of that matter, we said, depended upon the production, proof and examination of the complete record of the prior action at law. (189 Va., at page 799, 55 S. E. 2d at page 4.)

Shortly after the mandate from the appellate court was received in the clerk's office below, Rosetta Anderson filed a cross-bill against Ouner Anderson Patterson directly attacking the judgment in the action at law on the grounds, among others, that it was not a valid personal judgment against her, Rosetta Anderson, and that, in any event, it had been procured through the fraud and perjury of Ouner Anderson Patterson and witnesses testifying in her behalf.

Ouner Anderson Patterson filed an answer to the cross-bill, denying fraud in the procurement of the judgment in her favor in the prior action at law and reasserting her claim that her legitimacy had been adjudicated and established in that action.

Subsequently Rosetta Anderson filed an amended cross-bill praying that Ida Gray (then known by her married name as Ida Gray Davis) be made a party to the proceeding. Upon the service of process upon her Ida Gray Davis appeared and filed an answer stating that "her dower in the estate of Philip Anderson" was barred by Code, § 64-35, and admitting that she claimed "no interest, right or title" in the estate or property of decedent. Accordingly, she was dismissed as a party to the suit.

The original and cross equity suits were consolidated and the evidence taken *ore tenus* by the trial court. Two issues were presented: (1) Whether the complete record of the previous action at law between the parties established that Ouner Anderson Patterson was the legitimate daughter of Philip Anderson, and if so, whether the determination of her status as such was *res judicata* in the present equity proceeding; and (2) whether, aside from such prior adjudication, the evidence adduced showed that Ouner Anderson Patterson was in fact and in law the legitimate daughter of Philip Anderson.

Upon consideration of the evidence the lower court decided both issues adversely to the appellant, Ouner Anderson Patterson, and entered a decree adjudicating that she was not the legitimate daughter of Philip Anderson, that she had no interest in the property of which he died seized and possessed, and dismissing her bill. From that decree the present appeal has been taken.

We shall deal first with the contention of the appellant that the evidence adduced before the trial court in the consolidated equity suits established the fact that she was the legitimate child of Philip Anderson, being the daughter of a valid common-law marriage in the District of Columbia between him and Ida Gray.

The appellant produced a birth certificate filed in the Bureau of Vital Statistics of the District of Columbia, showing that on March 18, 1902, Ida Gray gave birth to a daughter in the District, and that Philip Anderson was the father of the child. This certificate, as filed in the Bureau on March 21, 1902, did not give the name of the child. In a supplement added to the certificate on December 9, 1946, the name of the child was stated to be Ouner Anderson. More will be said of this later.

There is evidence that during her childhood, and even later, Ouner was generally known and acknowledged by Anderson as

his child and that he showed affection for her down to the time of his death. There is also evidence that in 1902 common-law marriages were valid in the District of Columbia. But when we come to examine the evidence as to whether Philip Anderson and Ida Gray entered into a common-law marriage prior to the birth of their daughter we see that it is far from convincing.

Ida Gray Davis testified that at the time the child was born and shortly prior thereto she was living with her cousin at 1800 T street in Washington. She did not claim that Anderson lived at the same address, but on the contrary, admitted that he was living with his mother and sister in what is now Arlington county, Virginia, where he maintained his home. Her relation with Anderson is thus detailed on her direct examination:

"Q. What was the relation between you and Philip Anderson at the time you were in Washington?

"A. He was just a boy friend; that is all.

"Q. State whether or not you ever lived together in Washington as husband and wife?

"A. Yes, we did. We went around. He always said that I was his wife.

"Q. To whom would he say that?

"A. Any of his friends that he would meet. We did go as man and wife.

"Q. Did you represent yourselves as husband and wife?

"A. While we was in the city, yes, ma'am, but we never was married.

"Q. Did you intend to be his wife?

"A. Well, that is what he said. We did decide to get married and then after we came out here after he came here, he said he had to get married and he didn't know just who he was going to marry right at the time.

"Q. What did he say while he was in Washington with you?

"A. Just couldn't help himself when we came out here, he had to get married, but he was supposed to marry me when we were in the city, and after we came out here he said he was going to marry me.

"Q. While he was in the city what did he say about being married to you?

"A. Just told me he was going to get married."

Ida Gray Davis made no claim that she had ever assumed Anderson's name. She admitted that she knew that Anderson

had married Rosetta Richardson in October, 1902, scarcely six months after the appellant was born, and yet made no protest against this union. Indeed, she says, Anderson kept up his relations with her after his marriage to Rosetta.

It further appears from Ida Gray Davis' testimony that during Anderson's life, after the birth of their child, and without being divorced from him, she had married twice. Both of these marriages were solemnized after licenses had been procured. When pressed as to why she had married without first being divorced from Anderson, her reply was, "I wasn't married to Phil."

Another witness adduced by the appellant, when questioned by the court as to whether Ida Gray was known as Anderson's wife, replied, "In the neighborhood it was understood he was Ida Gray's sweetheart."

Rosetta Anderson testified that she was seventy-five years old at the date of the trial, in April 1950; that she had known Philip Anderson all of her life and married him in a church ceremony on October 6, 1902; that he was then living with his mother in what is now Arlington county; that after their marriage, and until his death, she (Rosetta) and Anderson had lived together in Arlington county. No children were born of this union. Although she knew Ida Gray the latter made no protest against the marriage and made no claim during Anderson's lifetime that he was or had been her (Ida's) lawful husband.

She further testified that her husband was killed in an automobile accident on January 30, 1946, and about six months thereafter she qualified as administratrix of the estate and accepted $1,200 in compromise settlement of her claim against the operator of the car. Ida Gray made no claim against the administratrix for any part of this fund, nor did she contend that she, as his widow, was entitled to qualify on his estate.

On December 9, 1946, the appellant applied to the Bureau of Vital Statistics for a copy of the birth certificate, which, as has been said, did not state the name of the child. She says that it was suggested to her by someone in the Bureau that the certificate should be amended so as to supply her name as that of the child. To that end she was given a form to be signed by her mother and herself. On the same day she returned the form to the Bureau with the required signatures, showing the name of the child as her own, Ouner Anderson. Although she testified

that her mother signed the form her mother denied that the signature was hers, or that she had any knowledge whatsoever of the form, or had any part in amending the certificate. The handwriting of the signature of Ida Gray on the form is strikingly similar to that of Ouner's signature.

It is in this manner that the name of the child, Ouner Anderson, was supplied in the birth certificate, more than forty-four years after the original certificate had been filed with the Bureau, and after the death of the father.

We are of opinion that there is ample evidence to support the finding of the trial court that the appellant was not the legitimate child of Philip Anderson, born of a valid common-law marriage in the District of Columbia between him and Ida Gray, but on the contrary, was the illegitimate child of the couple as the result of their illicit relations.

We turn next to the appellant's claim that her status as the legitimate child of Philip Anderson and Ida Gray, born of their common-law marriage in the District of Columbia, is *res judicata*. In brief, the claim is that in the action at law to which the appellant, Ouner Anderson Patterson, and the appellee, Rosetta Anderson, were parties, and in which the appellant's legitimacy was in issue, the appellant recovered a personal judgment against the appellee and that therefore appellant's legitimacy has been judicially established and may not again be inquired into in the present equity suit between the same parties.

The doctrine of *res judicata* is a proper and important principle of law and is universally recognized in the courts of this country. It is founded upon the two maxims of the law, that ''a man should not be twice vexed for the same cause,'' and that ''it is for the public good that there be an end of litigation.'' 8 Mich. Jur., Former Adjudication, etc., § 3, p. 577. But the doctrine is technical in nature and one who asserts it cannot complain if the proceedings upon which he relies are subjected to technical scrutiny.

It is essential to the application of the doctrine that the identical issue sought to be relitigated has been settled by a valid final judgment in a proceeding to which the identical persons or their privies were parties in the identical capacities in which they appear in the later litigation. As applied to the present case the inquiry is, has the legitimacy of the appellant

been settled and adjudicated by a valid personal judgment entered in favor of the appellant against the appellee in the action at law?

To ascertain the scope of the estoppel sought to be asserted, and to determine just what has been adjudicated and between what parties, inquiry may extend to the evidence and instructions as well as to the pleadings and judgment. 50 C. J. S., Judgments, § 712 (d), p. 181. Indeed, as we shall see, only after inquiring into the evidence and instructions are we able to ascertain that the legitimacy of the appellant was at issue in the action at law.

To sustain her contention that the issue of her legitimacy was *res judicata,* the appellant introduced in evidence the original record in the former action at law. This included the notice of motion for judgment, the plea of the defendant, the instructions to the jury, and the final judgment in which was embodied the verdict of the jury.

The evidence which had been heard in the action at law had not been transcribed and could not be produced in full. But the appellant offered parol evidence to show what evidence had been adduced and heard at the previous trial. This parol evidence tended to show that the appellant, Ouner Anderson Patterson, had been born on March 18, 1902, that she was the daughter of Ida Gray by Philip Anderson, as evidenced by the birth certificate to which we have referred, and that Anderson had always acknowledged and regarded Ouner as his daughter. It was further established by parol evidence that Ida Gray Davis testified at the trial of the action at law that she had entered into a common-law marriage in the District of Columbia with Philip Anderson shortly before 1902, and that appellant had been born of this union. There was also evidence that common-law marriages were then valid in the District of Columbia.

The notice of motion for judgment, which is copied in the margin,[2] is against Rosetta Anderson both individually and as

[2] "In the Circuit Court of Arlington County, Virginia

"Ouner Anderson Patterson, Plaintiff

v.

"Rosetta Anderson, Individually and as Administratrix of the Estate of Philip Anderson, Deceased, Defendant

"NOTICE OF MOTION FOR JUDGMENT

"To: Rosetta Anderson, 1211 Army Navy Drive, Arlington County, Virginia:

"You are hereby notified that on the 17th day of February, 1947, at 10:00 o'clock

administratrix of the estate of Philip Anderson, deceased. It contains two counts, both sounding in tort. The first count charges that the administratrix breached her duties as personal representative in not filing and prosecuting an action at law for damages for the benefit of the plaintiff, who was "the daughter and child of the deceased," against the operator of the automobile which struck and killed him.

The second count charges that the defendant wrongfully compromised and settled the claim for damages at an inadequate sum and retained the proceeds of the settlement.

The defendant appeared and filed a plea of "not guilty."

While the notice of motion does not so allege, the instructions told the jury in plain language that the plaintiff's right of recovery was predicated upon a finding that she was "the legitimate daughter of the deceased."

A. M., or as soon thereafter as it may be heard, the undersigned will move the Circuit Court of Arlington County, Virginia, at the courthouse thereof, for a judgment against you in the sum of Fifteen Thousand Dollars ($15,000), which said sum is due and owing by you to the undersigned for the damages, wrongs and injuries hereinafter set out, to wit: that heretofore, to wit, on the 30th day of January, 1946, Philip Anderson, the father of the undersigned, Ouner Anderson Patterson, was killed as the result of being struck by an automobile, his death having been caused by the wrongful act and negligence of the owner and operator of said automobile, and subsequently, to wit, on the 12th day of February, 1946, you did qualify in the Clerk's Office of Arlington County, Virginia, as administratrix of said Philip Anderson; and thereupon it became and was your duty as such administratrix and the personal representative of the said Philip Anderson to maintain an action against the owner and operator of said automobile for damages in the sum of Fifteen Thousand Dollars ($15,000) on behalf of the undersigned, the daughter and child of the deceased, and to submit said claim to a jury for determination to direct in what proportion the damages awarded should be distributed.

"Yet you, notwithstanding your said duty did fail to institute said action; did fail to maintain the same and did refuse to permit a jury to determine and direct what proportion of the damages should be distributed to the undersigned, the daughter and child of said decedent; to the great damage of the undersigned in the sum of Fifteen Thousand Dollars ($15,000).

"And for this, to wit, that the undersigned is advised and believes, and therefore alleges that you did compromise and settle said claim without consulting the undersigned and without any authority from the undersigned, for a small sum of money, not commensurate with the damage done and notwithstanding the fact that said death was caused solely and proximately by the negligent and wrongful act of the owner and operator of said automobile, and did retain the proceeds of settlement yourself, to the damage of the undersigned of $15,000.

"By reason of all of which the undersigned has been damaged in the sum of Fifteen Thousand Dollars ($15,000). Wherefore judgment in said sum will be asked at the hands of said court at the time and place aforesaid.

"OUNER ANDERSON PATTERSON
"Plaintiff".

The court also instructed the jury that before appellant's birth common-law marriages were valid in the District of Columbia. Therefore, it is manifest that the legitimacy of the appellant was an issue between the parties in the action at law, and that this issue was there adjudicated in her favor. Hence the first requirement for application of the doctrine of *res judicata* is met. But was this issue settled by a personal judgment against the appellee; and if so, was that judgment valid?

Under Code, § 8-634, an action for wrongful death must be brought in the name of the personal representative of the deceased. In bringing such suit the administrator does not act "in his general right of personal representative. * * * He sues not for the benefit of the estate, but primarily and substantially as trustee for certain kindred of the deceased, who are designated in the statute." *Anderson* v. *Hygeia Hotel Co.*, 92 Va. 687, 692, 24 S. E. 269. See also, *Beavers' Adm'x.* v. *Putnam's Curator*, 110 Va. 713, 715, 67 S. E. 353.

A suit against a fiduciary for failure to perform his official duties is a claim against him personally, and if sustained a personal judgment should be entered against him. 30 Am. Jur., Judgments, § 23, p. 829; 21 Am. Jur., Executors and Administrators, § 964, p. 915; *Id.*, § 966, p. 917; *Belvin's Ex'rs.* v. *French*, 84 Va. 81, 83, 84, 3 S. E. 891; *Fulkerson* v. *Taylor*, 100 Va. 426, 434, 41 S. E. 863.

Although the caption to the final judgment carries the name of the defendant as "Rosetta Anderson, Individually and as Administratrix of the Estate of Philip Anderson, Deceased," the judgment is "that the plaintiff recover of and from the defendant the sum of $1.00." The verdict upon which it was based read thus: "We the jury find in favor of the plaintiff and award the plaintiff $1.00 plus the cost of court."

Since the judgment does not in terms adjudge that the award be paid out of the funds held by the fiduciary, it is in form a personal judgment against the defendant. Burk's Pleading and Practice, 4th Ed., § 345, p. 664; *Fulkerson* v. *Taylor, supra* (100 Va., at page 434).

When we inquire further into the instructions granted by the court at the request of the plaintiff we find that she abandoned her tort claim under the second count of the notice of motion. At her request the court told the jury "that if they find that the defendant *as administratrix of the estate of Philip Anderson,*

*deceased,* received the sum of $1,200'' (emphasis added) in compromise settlement of the claim for the wrongful death of the deceased, ''and if the jury further find that the plaintiff, Ouner Anderson Patterson, is the legitimate daughter of the deceased, Philip Anderson, the jury shall determine whether or not all of said sum or what proportion thereof shall be paid to the plaintiff by the defendant.''

Under this instruction the claim was that the *administratrix* should be required to pay to the plaintiff out of that fund such portion thereof as the jury should find that the plaintiff was entitled to. A verdict and judgment based on this instruction should have been against the defendant as administratrix and not against her personally .

But since neither the verdict nor the judgment directed that the amount be paid out of the fiduciary fund held by the administratrix, the judgment must be considered, as we have pointed out, a personal judgment against the defendant, Rosetta Anderson. Yet, granting this, we must inquire whether it can be sustained as a valid personal judgment against her. Compare Code, § 8-222.

■ In our opinion the judgment cannot be sustained as a personal judgment under the first count of the notice of motion for judgment, for clearly this count does not state a cause of action.

The gist of this count is that the plaintiff was damaged by the failure of the administratrix to institute and prosecute an action at law for damages for the benefit of the plaintiff, the child of the deceased, against the wrongdoer who caused his death. But it does not follow that if such action had been successfully prosecuted the plaintiff would have shared in the sum recovered.

Code, § 8-636, leaves to the discretion of the jury to direct in what proportion the proceeds shall be distributed to the surviving widow or husband and children and grandchildren of the deceased. The section further provides that ''between members of the same class the jury shall have absolute discretion as to who shall receive the whole or any part of the recovery.'' Had the administratrix successfully prosecuted an action and recovered a verdict and judgment for damages against the wrongdoer, it is entirely speculative and incapable of proof that the plaintiff would have been awarded any part of the recovery, for under the plain terms of the statute a jury might have awarded

the entire sum to the widow. Hence, the plaintiff's essential allegation that she had been damaged by reason of the failure of the administratrix to prosecute an action for wrongful death was not susceptible of proof.

A complaint which shows on its face that an essential allegation is not susceptible of proof does not state a cause of action. 71 C. J. S., Pleading, § 232, p. 450.

A valid judgment cannot be predicated upon a complaint which does not state a cause of action, for, as we said in *Potts* v. *Mathieson Alkali Works,* 165 Va. 196, 207, 181 S. E. 521, 525, " 'The basis of every right of recovery under our system of jurisprudence is a pleading setting forth facts, warranting the granting of the relief sought. It is the *sine qua non* of every judgment or decree. No court can base its decree upon facts not alleged, nor render its judgment upon a right, however meritorious, which has not been pleaded and claimed. * * * Pleadings are as essential as proof; the one being unavailing without the other. A decree cannot be entered in the absence of pleadings upon which to found the same, and, if so entered, it is void. * * *' " See also, *Switzer* v. *Switzer,* 167 Va. 193, 197, 188 S. E. 161, 163.

■ Nor can the judgment be sustained as a valid adjudication under the second count of the notice of motion for judgment that the plaintiff was entitled to recover of the defendant personally the sum of $1.00 as a part of the fund which the administratrix had received and held as the result of the compromise settlement of the claim for the decedent's wrongful death. In the first place, as has been said, the form of the verdict and judgment is not in accord with the instruction on which they are predicated.

But aside from this, the parties necessary to a determination of that issue were not before the court.

Where the wrongful death statutes fix the proportion of the amount of recovery due a particular beneficiary, or his share in such fund has been judicially ascertained, such beneficiary may maintain an action against the personal representative to recover his share of the fund. 25 C. J. S., Death, § 37 (d), p. 1128; *Powell* v. *Blake,* 161 Tenn. 516, 33 S. W. 2d 78.

In *Powell's Adm'x* v. *Powell,* 84 Va. 415, 4 S. E. 744, we affirmed a decree in an *equity suit* holding that the father of a deceased who had suffered a wrongful death was entitled to

recover of the administratrix one-half of the fund which she had received in compromise settlement of a claim against the wrongdoer. In that case, as the opinion points out, under the statute, as then written, the father was entitled to one-half of the net amount recovered on such a claim.

But, as has been already said, our statute (Code, § 8-636) does not require that any specific proportion of the recovery, or even any amount thereof, be awarded to a child of the deceased. On the contrary, the entire amount may be awarded to the surviving widow to the exclusion of the child or children.

If the appellant's claim that her parents had been united in a valid common-law marriage be sound, then her mother, Ida Gray, or Ida Gray Davis, who had never been divorced from her father, Philip Anderson, was his lawful widow, and although living apart from him, had a claim on the fund which the administratrix had collected. *Porter* v. *Virginia Elec. & Power Co.*, 183 Va. 108, 31 S. E. 2d 337. Hence, she was a necessary party to any proceeding involving a proper distribution of the fund. Although she lived within the jurisdiction of the court and testified at the trial of the action at law, she was not made a party to the proceeding.

It is true that when Ida Gray Davis was made a party to the present equity suit she appeared and filed an answer disclaiming any interest in the estate or property of Philip Anderson. But at the time of the trial of the prior action at law she had made no disclaimer to an interest in the fund held by the administratrix.

Where, as here, the purpose of the proceeding was to require the personal representative to account to the plaintiff for her unascertained share of the proceeds of the recovery, she should have proceeded in equity, convening all of the parties who had claims on the fund.

If the rights of other beneficiaries are involved, a single beneficiary cannot recover his unascertained proportion of the fund in an action at law against the personal representative as the trustee of the fund. *Abbott* v. *Abbott*, 112 Vt. 449, 28 A. 2d 375.

"* * * A valid judgment cannot be rendered where there is a want of necessary parties, and a court cannot properly adjudicate matters involved in a suit when necessary and indispensable parties to the proceedings are not before it. * * *"

49 C. J. S., Judgments, § 27, p. 67. A judgment rendered where necessary parties are not before the court does not operate to bar a subsequent action. 30 Am. Jur., Judgments, § 211, p. 947.

The trial court did not pass upon the claim of the appellee that the judgment in the action at law had been procured through fraud and perjured testimony of certain witnesses who testified for the appellant. But it did observe that if the weakness of appellant's case had been disclosed at the first trial, as it was at the hearing in the equity suit, a different result would have been reached at the first hearing. It might very well have added that it plainly appears from the testimony adduced at the second trial that one or more key witnesses for the appellant testified falsely at the first trial.

However, it is well settled that in order to vitiate a judgment on the ground that it was procured through fraud, the unsuccessful litigant must do more than strengthen his case or disclose the weakness in that of his adversary on a relitigation of the same issue. He must show more than that certain witnesses testified falsely on behalf of the successful party at the first trial. See Freeman on Judgments, 5th Ed., Vol. 3, §§ 1231, 1233, 1241.

In *McClung* v. *Folks,* 126 Va. 259, 101 S. E. 345, we held that in order to vitiate a judgment on the ground of fraud the party complaining must show not only that testimony at the first trial was false, but also that "the fact of its falsity could not have been discovered by the exercise of proper diligence" on his part. (126 Va., at pages 272, 273.) Here there was no showing that this requirement was met.

But aside from this, and for the reasons already stated, we hold that the judgment in the action at law is not a valid personal judgment against the appellee, and therefore is not a bar to a relitigation between the parties of the issue of the appellant's legitimacy.

For these reasons we are of opinion that the decree appealed from is right, and accordingly it is

*Affirmed.*