PRESENT: All the Justices

IN RE: LAKISHA WOODLEY, CO-ADMINISTRATOR
OF THE ESTATE OF JAMEER KHAMARIE
WOODLEY, DECEASED, ET AL.

                                                  OPINION BY
Record No. 141706                    JUSTICE D. ARTHUR KELSEY
                                            October 29, 2015

FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
Robert W. Curran, Judge Designate

In this case, a jury awarded wrongful death damages to several statutory beneficiaries, including separate awards to two minors, who were brothers of the decedent. Over the objection of the decedent's personal representatives, the parents of the children, the trial court ordered that the awards to the minors be held by the clerk of court until they reach the age of majority. In doing so, the personal representatives argue, the trial court erred. We agree.

I.

In 2009, a tragic school bus accident killed four-year-old Jameer Khamarie Woodley. His parents initially qualified as co-administrators of his estate, posting a $64,000 bond. Later, they qualified as co-administrators specifically "under Va. Code § 8.01-50," posting a $100 bond and filing a wrongful death suit against the Southampton County School Board and three bus drivers.[1] A jury awarded damages to the statutory beneficiaries, including the decedent's three older brothers. Jaylon Woodley, twelve years old at the time of the verdict, was awarded $750,000. Jaleel Woodley, five years old at the time, was awarded $200,000.[2]

---

[1] A deputy clerk for the Southampton County Circuit Court issued separate "Certificate[s]/Letter[s] of Qualification" for the parents as both the co-administrators of the estate and the co-administrators "under Va. Code § 8.01-50." Pls.' Ex. 9. Immediately after the qualification and before the bond, the letters state, "The powers of the fiduciary(ies) named above continue in full force and effect." Id.

[2] The decedent's oldest brother was awarded $300,000, but was not subject to the proposed trusts because he had reached the age of majority by the time of the verdict.

The parents presented to the trial court two proposed irrevocable trusts to receive the funds awarded to their minor sons.[3] The trusts would be professionally managed by an independent trust company serving as trustee. The parents would have no "ongoing rights," including the "right to control, alter, amend, or terminate [the] Trust Agreement." The agreements emphasized that the trust assets were to be used exclusively for the benefit of each minor son and not to be used without court permission as a substitute for the parents' legal duty of support. The agreements also gave the trustee the discretion to spread out over time the distribution of the assets after the sons reached the age of majority, subject to judicial review if requested by one of the sons.

The parents also presented the trial court with an affidavit from the proposed trustee. The trustee verified that she served as an officer in a trust company that provides professionally managed trust and investment services. The company, she stated, has been "recognized as a fiduciary by both The Bureau of Financial Institutions and The Federal Reserve." Consistent with the stated purpose of the minor beneficiaries' trust instruments, the "trust assets would typically be invested in a mixed portfolio of conservatively chosen stocks and bonds." The trust company projected a possible 7% rate of return on the trust assets.

The trial court rejected the proposed trusts and directed payment of the awards to the clerk of court. By letter, the clerk advised the parties that the funds would be deposited in a

---

[3] The parents' attorney specifically included the trust agreement for Jaylon as an attachment to an email during discussions with the trial court. Later, the proposed trust agreement for Jaylon was introduced as an exhibit to the parents' Motion for Reconsideration. While the proposed trust agreement for Jaleel was not included in the record, the discussions between the trial court and the parents' attorneys indicated that the two trusts would be identical in form and were being considered simultaneously. See, e.g., id. at 49 (email from trial court mentioning "proposed Trusts"); id. at 118 (affidavit from the vice president of trust company noting that the company was asked to serve "as trustee under two proposed trusts for Jaylon Woodley (age 12) and Jaleel Woodley (age 6)").

savings account at SunTrust Bank with a "current rate-of-return" of "one tenth of one percent (.10%)." After filing an unsuccessful motion to reconsider, the parents appealed to this Court.

II.

On appeal, the parents contend that the trial court erred when it ordered payment of the minors' wrongful death awards to the clerk of court. We agree.

Wrongful death actions appear to have been unknown in English common law. Wilson v. Whittaker, 207 Va. 1032, 1035, 154 S.E.2d 124, 127 (1967).[4] Based on this belief, the Virginia General Assembly in 1871 enacted the Death by Wrongful Act Statute and "modeled [it] on Lord Campbell's Act," which was passed in 1846 by the English Parliament. Id. With very few exceptions,[5] most aspects of a wrongful death suit — how it must be filed, who qualifies as beneficiaries, what damages may be recovered, how it may be settled, and the like — are addressed in Code §§ 8.01-50 through -56, the current codification of the Death by Wrongful Act Statute.

Under the Death by Wrongful Act Statute, the personal representative of the decedent plays a pivotal role. In this context, the personal representative includes the executor or administrator of a decedent's estate who has been qualified by a court to hold the position. See

---

[4] See also 2 Dan B. Dobbs, et al., The Law of Torts § 372, at 501-02 (2d ed. 2011); William L. Prosser & Page Keeton, Prosser and Keeton on the Law of Torts § 127, at 945 (5th ed. 1984); Francis B. Tiffany, Death by Wrongful Act § 1, at 1 (1893); Wex S. Malone, The Genesis of Wrongful Death, 17 Stan. L. Rev. 1043, 1051 (1965). This view, however, is not unanimous among scholars. See John L. Costello, Virginia Remedies § 17.07[8], at 17-61 (4th ed. 2011) (questioning the historicity of this often repeated assertion); 1 Stuart M. Speiser & James E. Rooks, Recovery for Wrongful Death § 1:3, at 1-16 (4th ed. 2005) (arguing that Baker v. Bolton, 1 Camp. 493, 170 Eng. Rep. 1033 (N.P. 1808), the English common law case relied upon for the statement that wrongful death actions were disallowed, "was based on neither precedent nor logic").

[5] See, e.g., Code § 8.01-244(B) (statute of limitations for wrongful death actions); Code § 8.01-424 (judicial approval of settlements involving persons under a disability); Code § 64.2-454 (appointment of administrator "solely for the purpose of prosecution or defense" of personal injury or wrongful death actions).

Code § 1-234; Bartee v. Vitocruz, 288 Va. 106, 113, 758 S.E.2d 549, 552 (2014); Addison v. Jurgelsky, 281 Va. 205, 208, 704 S.E.2d 402, 404 (2011); Bolling v. D'Amato, 259 Va. 299, 304, 526 S.E.2d 257, 259 (2000). A wrongful death action may only "be brought by and in the name of the personal representative of such deceased person." Johnston Mem'l Hosp. v. Bazemore, 277 Va. 308, 312, 672 S.E.2d 858, 860 (2009) (quoting former Code § 8.01-50(B) (now Code § 8.01-50(C))). A wrongful death award "recovered in any action shall be paid to the personal representative." Code § 8.01-54(C). From the gross award, the personal representative must "pay the costs and reasonable attorney's fees," as well as "hospital, medical, and funeral expenses." Id. "The remainder of the amount recovered shall thereafter be distributed by the personal representative . . . to the beneficiaries." Id.

These statutory provisions presuppose that the personal representative who receives and distributes the award does so in his capacity as a fiduciary representing the interests of the beneficiaries. See Antisdel v. Ashby, 279 Va. 42, 51, 688 S.E.2d 163, 168 (2010) (discussing the appointment of a personal representative for the purpose of wrongful death and personal injury survival actions in terms of "fiduciary power"); Wilson, 207 Va. at 1036, 154 S.E.2d at 128 (reciting the accepted principle that "in an action for wrongful death the personal representative of the deceased sues primarily as trustee for certain statutory beneficiaries and not for the general benefit of the decedent's estate"); Anderson v. Hygeia Hotel Co., 92 Va. 687, 692, 24 S.E. 269, 271 (1896) (noting that the personal representative in a wrongful death action proceeds "primarily and substantially as a trustee for [the statutory beneficiaries]"); Martin P. Burks, Common Law & Statutory Pleading & Practice § 67, at 134 (T. Munford Boyd, ed., 4th ed. 1952) (stating that the personal representative in a wrongful death suit "acts, not in his capacity as the general representative of the decedent's estate, but in a capacity more nearly

4

analogous to that of a trustee for the statutory beneficiaries").[6]

Longstanding principles outside the context of the Death by Wrongful Act Statute similarly recognize that a "personal representative of a decedent holds a position of trust and confidence." Owens v. Owens, 196 Va. 966, 972, 86 S.E.2d 181, 185 (1955) (quoting Virginia Trust Co. v. Evans, 193 Va. 425, 433, 69 S.E. 2d 409, 414 (1952)); see also 2 T.W. Harrison & James P. Cox, Harrison on Wills & Administration for Virginia and West Virginia § 25.05, at 25-13 (4th ed. 2007) (describing the "statutory powers of personal representatives" in terms of powers granted to "a fiduciary"); id. § 25.14, at 25-22 (discussing the "fiduciary obligation" and "fiduciary duty" of a personal representative in the context of selling property of the estate). A personal representative "must exercise the highest fidelity and utmost good faith in dealing with the estate. In the discharge of his fiduciary obligations, he is required to use the same measure of care which a careful and prudent person would ordinarily use under like circumstances in his own personal affairs." Virginia Trust Co., 193 Va. at 433, 69 S.E.2d at 414.[7]

The Death by Wrongful Act Statute directs that an award "shall be paid to the personal representative," Code § 8.01-54(C), and then specifies that the "remainder of the amount

---

[6] See also Code § 1-234 (defining "personal representative" as including "the executor of a will or the administrator of the estate of a decedent"); Code § 8.01-2 (defining "fiduciary" as including an "executor" or "administrator"); Code § 64.2-100 (including "personal representative" in the definition of "fiduciary"); Pls.' Ex. 9 (describing the powers of the administrator for a wrongful death suit as "powers of the fiduciary").

[7] A fiduciary can be held liable for violating his fiduciary duties. See, e.g., Code § 64.2-770(D) (stating that, in the context of trusts, "[t]he holder of a power to direct is liable for any loss that results from breach of a fiduciary duty"); Patterson v. Anderson, 194 Va. 557, 567, 74 S.E.2d 195, 201-02 (1953) (noting that "[a] suit against a fiduciary to perform his official duties is a claim against him personally"); Burks, supra, § 345, at 664 (summarizing the effects of "[j]udgments against executors, administrators and trustees"). These principles apply equally to fiduciaries serving as personal representatives who represent the interests of the statutory beneficiaries under the Virginia Death by Wrongful Act Statute. See Patterson, 194 Va. at 567, 74 S.E.2d at 201-02 (discussing the fiduciary duties and liabilities of a personal representative in the context of a wrongful death action).

5

recovered shall thereafter be distributed by the personal representative" to the beneficiaries in accord with the allocation of the awards in the verdict, id. This statutory duty necessarily presupposes that the distribution will be made in full conformity with the personal representative's fiduciary obligations. When the beneficiaries are adults, the distribution duty is purely ministerial — each adult beneficiary receives whatever he is entitled to receive. In contrast, when the beneficiaries are minors, the distribution duty requires a multitude of judgment calls by the personal representative. How and for what length of time should the funds be preserved? What type of entity should manage the funds and with what type of investment vehicle, governed by what level of risk-reward ratio?

Nothing in the Death by Wrongful Act Statute authorizes a trial court presiding over a wrongful death award to dictate proactively the specific choices that a personal representative should make on these issues. In this case, the parents sought to establish professionally managed, irrevocable trusts, to appoint a disinterested and experienced officer of a well-recognized institution to serve as trustee, to govern the trusts through trust instruments that expressly precluded any interference by the parents, and to provide for a gradual payout of the trust assets throughout the early years of their sons' adult lives. The trial court presiding over the wrongful death awards in this case had no authority to disregard the statutory command directing that the award "shall be paid" to the personal representatives. Code § 8.01-54(C).[8]

Our confidence on this subject is bolstered by other provisions conspicuously present in the Code. Code § 8.01-55 authorizes a personal representative to "compromise any claim" so

---

[8] We leave for another day the question whether a trial court has any supervisory power over a personal representative in a wrongful death action in circumstances in which the evidence gives rise to a reasonable suspicion that the personal representative is contemplating action that would constitute a breach of fiduciary duty. Because nothing in this case raises such suspicions, we do not address such hypothetical situations.

6

long as he obtains the approval or consent of the circuit court. When a settlement of a wrongful death claim involves a minor beneficiary, Code § 8.01-424(A) grants the circuit court "the power to approve and confirm" the proposed compromise. If the court approves the compromise, Code § 8.01-424(E) authorizes the court, in its discretion, to direct payment "to the parent or guardian of the minor to be held in trust for the benefit of the minor." If the court deems it appropriate, the approved trust may provide for its termination "at any time following attainment of majority." Id.

The presence of specific authorization for court review and approval of wrongful death settlements involving minors contrasts sharply with the absence of any such authority over the distribution of wrongful death awards to minors.[9] The reason for this could be quite simple. In some cases, like the present one, the personal representatives (parents of the deceased child) are themselves statutory beneficiaries. Allowing them to have unreviewable power to structure a global settlement on behalf of all beneficiaries (which is the norm in this type of litigation) would place their personal interests in conflict with the interests of the minor beneficiaries. No such potential conflicts of interest exist, however, when a judge or jury decides by verdict the specific amounts awarded to each statutory beneficiary.

We may hypothesize policy reasons for treating wrongful death awards differently than wrongful death settlements, but our decision does not depend on such speculations. The legislature is "the author of public policy." Campbell v. Commonwealth, 246 Va. 174, 184 n.8,

---

[9] See generally Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107-08 (2012) (discussing the "negative-implication canon," or "[t]he expression of one thing implies the exclusion of others"); W. M. Lile, Notes on Statutes § 59, at 35 (1911) (reciting "[t]he maxim that the 'expression of one thing is the exclusion of another'" as a canon of Virginia statutory interpretation). See, e.g., Fisher v. Tails, Inc., 289 Va. 69, 75, 767 S.E.2d 710, 713 (2015) (applying "the statutory canon of *expressio unius est exclusio alterius* ('the express mention of one thing [in a statute's language] excludes all others')").

431 S.E.2d 648, 654 n.8 (1993). For us, then, "the 'best indications of public policy are to be found in the enactments of the Legislature.'" City of Charlottesville v. DeHaan, 228 Va. 578, 583, 323 S.E.2d 131, 133 (1984) (quoting Mumpower v. Housing Auth. of Bristol, 176 Va. 426, 444, 11 S.E.2d 732, 739 (1940)). "We can only administer the law as it is written." Coalter v. Bargamin, 99 Va. 65, 71, 37 S.E. 779, 781 (1901). We may not extend the meaning of a statute "simply because it may seem to us that a similar policy applies, or upon the speculation that if the legislature had thought of it, very likely broader words would have been used." Franklin & Pittsylvania Ry. Co. v. Shoemaker, 156 Va. 619, 624, 159 S.E. 100, 102 (1931) (quoting McBoyle v. United States, 283 U.S. 25, 27 (1931)).

We acknowledge the concerns expressed by our colleague on the trial court about the risks posed by hampering judicial control over the distribution of wrongful death awards to minor beneficiaries. These concerns are no doubt born of experience and a commendable sense of judicial caution. It is altogether possible, as our colleague concluded, that the legislature implicitly intended trial courts to supervise, as a matter of course, all wrongful death awards to minor beneficiaries. For us, however, "[t]he question here is not what the legislature intended to enact, but what is the meaning of that which it did enact. We must determine the legislative intent by what the statute says and not by what we think it should have said." Carter v. Nelms, 204 Va. 338, 346, 131 S.E.2d 401, 406-07 (1963). What the legislature said is that a wrongful death award "shall be paid to the personal representative" for distribution to the beneficiaries. Code § 8.01-54(C). We presume that the legislature says what it means and means what it says. Given the clarity of Code § 8.01-54(C), we may neither add to this statutory text nor subtract from it. See generally Logan v. City Council, 275 Va. 483, 492, 659 S.E.2d 296, 301 (2008).

8

III.

In sum, the trial court erred when it refused to direct payment of the minor beneficiaries' awards to the personal representatives and instead ordered that the awards be placed in a bank account maintained by the clerk of court.  We reverse and enter final judgment ordering the payment of the awards to the personal representatives.

<u>Reversed and final judgment.</u>

9